# Delia Denton's Guardians, *vs.* James D. Denton's Executors.

A marriage settlement or deed conveyed certain negro slaves, belonging to the intended wife, to *a trustee,* to hold the same *to the use* of husband and wife during their joint natural lives, and after the death of either, to the use of such person or persons, and for such intents and purposes as the wife, by deed or will, shall direct, limit, or appoint, and in default of any such limitation, direction, or appointment, then *to the use* of the wife, *her heirs and assigns forever.* The wife died in 1846, leaving an only child, an infant daughter, and the husband survived her, and held the negroes till 1856, when he died. The guardians of the infant daughter then brought suit *at law* against the executors of the husband, for the hire of these negroes from 1846 to 1856. HELD:

1st. That by this deed, the whole *equitable* interest in the negroes devolved upon the infant daughter upon the death of her mother, but the title was an equitable one only, and gave the guardians of the infant no standing in a *court of law* to sue for the hires of the negroes.

2nd. The obvious intent and purpose of the deed was, that the trust *should continue* for the benefit of the child or children of the wife, and the title of the trustee was meant to continue, with the obligation and duty to preserve the property for their benefit, at least until they should become *sui juris.*

By the common law, a *cestui que trust* has no standing in court *in propria persona;* he can only assert his rights in a court of chancery; at law the trustee, though clothed with the mere dry legal title, is regarded as the real owner, and his name must be used in any action or other proceeding affecting the title to the property.

Personalty is not within the statute of uses, and the legal title to such property, under a deed of trust, is unaffected by the operation of that statute.

When a trust has been created in personalty, and all the purposes of the trust have ceased or at an end, the absolute estate is in the person entitled to the last use, but this must depend on the plain intent and meaning of the instrument.

APPEAL from the Circuit Court for Calvert county.

*Assumpsit,* brought on the 8th of October 1857, by the appellants against the appellees, to recover the hire of certain negro slaves, alleged to be the property of the plaintiffs' ward. Pleas, *non-assumpsit* and set-off.

*Exception.* The plaintiffs proved that in August 1857, James D. Denton, the defendants' testator, intermarried with

Charlotte A. Wood; that Charlotte died in September 1846, leaving an only child, the ward of the plaintiffs, who are admitted to be her guardians, and that James D. Denton died in August 1856, leaving the defendants his executors; that at the time of said marriage, the said Charlotte owned sundry valuable slaves, which were in the joint possession of Denton and wife, until the death of the latter, in 1846, from which time they remained in the sole and separate use and possession of the surviving husband until his death, in 1856. They further proved the value of the annual hires of said negroes during the period they so remained in the sole possession of the surviving husband. The plaintiffs then offered to read in evidence the following marriage contract, duly executed, acknowledged and recorded, having first proved that Lavielle, the trustee therein named, had been dead for many years before the institution of this suit.

This deed, dated the 13th of July 1838, was between James D. Denton of the first part, Charlotte A. Wood of the second part, and Uriah Lavielle of the third part. It recites the intended marriage, and that the parties have agreed "that all the real and personal estate" belonging to the said Charlotte, "consisting of a number of slaves, and some other personal property," shall be conveyed to the uses, intents and purposes expressed in the deed, and then conveys "all the estate and property, real and personal, of the said Charlotte, which she now hath, or may hereafter have, any right, title or claim to, either at law or in equity," to Lavielle and his heirs, to hold the same "to the use of the said Charlotte, her heirs and assigns, until the said intended marriage shall be had, and from and immediately after the solemnization thereof, to use of the said James and Charlotte, for and during their joint natural lives, without impeachment of, or for any manner of waste or loss in said property whatsoever, and immediately after the death of either of them, the said James or Charlotte, then to hold the same to the use of such person or persons, or for such intents and purposes as the said Charlotte, whether covert or sole, at any time or times hereafter, during her life, by any deed or instrument of writing to be

executed by her, or by her last will and testament in writing, or any writing purporting to be her last will and testament, executed as such, shall, notwithstanding her coverture, limit, direct or appoint, *and in default of any such limitation, direction or appointment by her, the said Charlotte, then to use of the said Charlotte, her heirs and assigns forever*; and whereas the said Charlotte is possessed of a considerable personal estate, and by this agreement the said James hath agreed to relinquish the whole interest which the law would give him therein, in case the intended marriage takes place, now, in consideration thereof, the said Charlotte doth hereby covenant and agree to take the provision hereby made for her, as and for her jointure, and in lieu and satisfaction of all such dower or thirds at law which she could or might have claimed or been entitled to, should the intended marriage take place, out of or from any of the lands or personal estate whereof the said James now is or hereafter may be seized or possessed."

The court (BREWER, J.) refused to let the said marriage contract be read to the jury, and was of opinion that it gave to the plaintiffs no right of action whatever for the recovery of the annual hires of said slaves from the defendants, as executors as aforesaid, and instructed the jury that they must find a verdict for the defendants under all the proof in the case. To which opinion, refusal, and instruction to the jury, the plaintiffs excepted, and the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*A. B. Hagner*, for the appellants:

By the proper construction of this deed or marriage contract, the *trust* in the negroes was *executed* in the only child of the wife upon her death, without having made a deed or will, and the hires of the negroes, from the time of her death, belonged to the child who can maintain an action for their recovery in the name of her guardians. 2 *Bouv. Ins., sec.* 1915. *Co. Eliz.*, 46. 10 *Bac. Abr., Title Uses & Trusts,*

Denton *vs.* Denton.

·(*m.*) 3 *Munf.*, 570, *Baird vs. Bland.* 6 *Munf.*, 38, *Hop-kins°vs. Ward. Kirby,* 368, *Bacon vs. Taylor.* Cowp., 46, *Hart vs. Knot. Ibid.*, 436, *Cadogan vs. Kennett.* 2 *Bailey,* ·330, *Jones vs. Cole.* 17 *Ark.*, 154, *McNeill vs. Arnold.* 3 *Md. Rep.*, 551, *Ware vs. Richardson.*

C. S. *Parran* and A. R. *Sollers*, for the appellees:

The marriage contract conveys the property to the trustee, Lavielle, and all suits at law relative thereto, should be instituted by the trustee. The title of the ward of the plaintiffs was but a mere equitable title, which could not authorize her ·guardians to sue at law. The legal estate was conveyed to the trustee, and was still outstanding. 3 *G. & J.*, 389, *Green vs. Johnson.* 7 *G. & J.*, 1, *Callis vs. Ridout. Hill on Trustees*, 316, 317, 248. 6 *Rich. Law Rep.*, 315, *Harley vs. Platts.*

BARTOL, J., delivered the opinion of this court.

This action was instituted by the appellants, to recover hire for certain negro slaves, alleged to be the property of Delia Denton, and to have been used and employed by the defendants' testator, for his own benefit, from the year 1846 to the year 1856. The proof shows that the slaves in question belonged, before her marriage, to Charlotte A. Denton, the wife of the defendants' testator, and mother of Delia Denton, the ward of the plaintiffs, and were conveyed by the ante-nuptial deed or settlement, executed by James D. Denton and wife, on the 13th day of July 1838, (for which see *ante* 404.) The only exception taken below, was to the refusal of the circuit court to allow the deed or marriage settlement to be offered in evidence by the plaintiffs.

In the argument of the cause in this court, it was not denied that the effect of the deed was to vest the legal estate in the trustee named therein, for the use of James Denton, and Charlotte, his wife, during their joint lives, and upon the death of Charlotte, without having made any disposition or appointment, for the use of her only child, Delia Denton, the ward of the plaintiffs. And we think, by a proper construc-

tion of the deed, and under the proof in the cause, the whole equitable interest in the negroes mentioned devolved upon Delia Denton, on the death of her mother.

But the question presented by the bill of exceptions, for the decision of this court, is, whether the ward of the plaintiffs had, under the deed, such a title as will enable them to maintain a suit at law? On the part of the appellants it has been contended, that on the death of Charlotte, without having made a deed or will, the object of the trust was fully accomplished, and that the whole estate, legal and equitable, became vested in the *cestui que use.* On the other hand, it is argued that the evidence offered disclosed a mere equitable title in Delia Denton, which could not authorize her guardians to sue at law; the legal estate having been conveyed to a trustee, and being still outstanding. If this latter view be correct, then there was no error in the action of the circuit court; for no principle is better settled than that "by the common law, a *cestui que trust* has no standing in court in *propria persona;* he can only assert his rights in a court of chancery. *Green vs. Johnson,* 3 *G. & J.,* 389. At law the trustee, although clothed with the mere dry legal title, "is regarded as the real owner, and his name must be used in any action or other proceeding affecting the title to the property." *Hill on Trustees,* 316. Unless, therefore, under the marriage settlement, the trust terminated on the death of Mrs. Denton, and the legal estate became vested in her daughter, this action cannot be maintained. This depends upon the construction of the deed. Personalty is not within the statute of uses, and the legal title to the property, in this case, is unaffected by the operation of that statute. In *Hill on Trustees,* 248, it is said, that "the question as to the duration of the estate of the trustees, can rarely arise where the subject is personal estate; for in that case the whole legal interest is, in general, vested in the trustees by a gift, without any words of limitation, and will continue in them until divested by a legal transfer or assignment." See, also, *Hanson & Wife, vs. Worthington,* 12 *Md. Rep.,* 419. It is undoubtedly true, that "when a trust has been created in personalty, and all the

purposes of the trust have ceased, or are at an end, the absolute estate is in the person entitled to the last use." *Rice vs. Burnett*, 1 *Speers Eq. Rep.*, 579. *Harley vs. Platts*, 6 *Rich. Law Rep.*, 315. But this must depend on the plain intent and meaning of the instrument creating the trust. Looking at the provisions of the marriage settlement in this case, we find no sufficient ground for saying that it intended the trust to terminate, and the estate of the trustee to be divested on the death of Mrs. Denton; on the contrary, the obvious intent and purpose was, that the trust should continue for the benefit of her child or children; and the title of the trustee was meant to continue, with the obligation and duty to preserve the property for their benefit, at least until they should become *sui juris*.

If Lavielle, the trustee selected by the deed, were now living, and asserting his title to the property, or to their hire, in a court of law, it can hardly be questioned that his right would be supported; and the same principle would apply to a new trustee, if one had been appointed in his place. The deed offered in evidence showed only an equitable title in the plaintiffs, which could give them no standing in a court of law, and there was no error in its rejection as evidence.

*Judgment affirmed.*