## WM. J. HOOPER et al., Trustees, vs. EDWARD L. FELGNER et al., Executors and Guardians. EDWARD L. FELGNER et al., Executors and Guardians, vs. WM. J. HOOPER et al., Trustees.

*Duration of Trust Estate—Devise for Life in Trust, with Remainder Over—Trusts of Personal Property—Guardian and Ward.*

Where real estate is given to trustees and their heirs in trust to pay the net income to one for life, and upon his death in trust for his children and the issue thereof living at his death, absolutely the trust ceases upon the death of the life-tenant, the interest of the *cestuis que trust* in remainder being then converted into a legal estate.

The same rule is applied where the trust embraces personal property, and when all the objects of the trust have been accomplished, the person entitled to the beneficial use is regarded as the absolute owner, and as such is entitled to the possession of the property. Nor will the minority of the *cestuis que trust* in such case cause the trust to continue until they become *sui juris*, but the guardians of such infants are entitled to hold the property.

Real estate was devised to trustees upon trust to permit the testator's daughter G. to use the same and to take the net rents, etc., during her life, without power to anticipate the income or encumber the trust estate, and at her decease, upon trust for the children of G. then living and the issue of any then deceased child; in default of children a power of appointment by will was given to G. After the death of the testator, G. died, leaving two daughters, one of whom was under age. *Held,* that upon the death of G., the life-tenant, the trustees had no longer any active duties to perform, and the legal estate being executed under the Statute of Uses in the two daughters, the trust was at an end.

Personal property was bequeathed to trustees upon trust to pay the net income thereof to the testator's daughter G. for life, without power of anticipation or to encumber the estate, and from her decease upon trust for all the children of G. then living, and the issue of any deceased children. *Held,* that upon the death of G., leaving two daughters, one being an infant, the objects of the trust were accomplished, and G.'s daughters became the absolute owners of the property, the share of the infant daughter being payable to her guardian.

Cross appeals from the Circuit Court of Baltimore City. Proceedings were instituted in said Court for the purpose of making partition of the residue of the estate of William E. Hooper, deceased, and by the return of the commissioners,

ratified April 25, 1893, personal property valued at the sum of $210,382 was allotted to Wm. J. Hooper and others, trustees under the will of said decedent, in trust for the testator's daughter, Grace Felgner, for life, as hereinafter set forth. The life-tenant died in September, 1893, leaving two daughters, Marie Theresa and Catharine Hooper Felgner, aged about nineteen and thirteen years, respectively, and no other descendants. In December, 1893, the said trustees filed a petition in said cause setting forth the above facts, and also that the petitioners held certain real estate devised in trust for the said Grace Felgner, and asking for an order directing what disposition should be made by them of the property so held in trust.

By the sixth clause of his will, Wm. E. Hooper devised to his four sons and the survivors, two lots of ground "upon trust to permit my daughter, *Grace Felgner*, to use, occupy and enjoy the same, and the net rents, income and profits thereof, to take during her natural life without power to her to anticipate the payment of such rents and income or to charge or encumber the trust estate ; and upon her decease upon trust for the child or children of the said Grace living at the time of her death, and the then surviving issue of any then deceased child or children of said Grace, but so that such issue, if such there be, shall take by representation the share or portion only which the parent or respective parents, if living, would have taken. But should no child or descendant of my daughter Grace survive her, then this share of my estate shall be subject to such appointment or disposition thereof by last will and testament, or writing in the nature thereof, unto or among any one or more of my then surviving grandchildren and surviving issue of my then deceased grandchildren, as my said daughter Grace shall be pleased to make; and in default thereof, and so far as any such appointment or disposition shall or may fail to be a full and effectual disposition of said property, then this portion of my estate, or so much thereof as shall not be fully disposed of as aforesaid, to be divided equally *per capita*

among all my grandchildren then living and the surviving issue of my then deceased grandchildren absolutely; so, however, that each issue shall represent their parent or parents, and take only the share to which the latter would have been entitled had he, she or they survived."

By the twelfth clause of his will, the testator directed that the residue of his estate should be divided into ten equal shares, and gave one of said shares to the same trustees "upon trust to pay the net income thereof, as it shall accrue (except as hereinafter provided), unto my daughter, Grace Felgner, during her natural life, and for her sole and separate use, without power of anticipation or to charge or encumber the trust estate; and from and after her decease, upon trust for all and singular the children or child of the said Grace living at her death, and the issue then surviving of any child or children of the said Grace who may be then deceased, equally and absolutely; but so that the issue of a deceased child or children, if any, shall take by representation the share or shares only which their parent or parents, if living, would have taken."

The Court below (DENNIS, J.), decreed "that the trusts created in and by the 6th clause of the last will and testament of the said William E. Hooper, deceased, and that the trusts created in and by the 12th clause thereof, in so far as they relate to the share of the estate of the testator devised and bequeathed to said petitioners for Grace Felgner, one of the daughters of said testator, and her children, are to continue as to one-half thereof until Marie Theresa Felgner, one of the children of the said Grace Felgner, arrives at the age of twenty-one years, and as to the remaining half thereof until Catherine Hooper Felgner, the other child of the said Grace Felgner, attains the age of twenty-one years, and that upon said children attaining the full age of twenty-one years respectively, they shall each be entitled to receive one-half of the said property and estate so held in trust for them, free, clear and discharged from all trusts created in and by said will.

"And that in the meantime said trustees shall manage said estate and shall pay over to the said Marie Theresa Felgner, for her maintenance and support, such portion only of the net income derived from her share of said property and estate as in the judgment of said trustees or a majority of them may seem right and proper, and to pay over to Edward L. Felgner and Alcaeus Hooper, guardians of Catherine Hooper Felgner, the net income derived from her share of said property and estate."

From this decree, both the trustees and the guardians of Marie Theresa and Catherine Felgner appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for the trustees.

The majority of the trustees respectfully suggest that the children of Mrs. Felgner took, under the will of their grandfather, "an equitable fee simple in remainder," and that consequently the trusts do not terminate upon their attaining their majority, respectively; and they have appealed simply, so that upon the death of any one or more of their surviving sisters, they may know exactly what their duties and obligations in the premises are—the provisions in the will with reference to the shares of their other sisters being identically the same as those relating to Mrs. Felgner and her children. The learned Judge below was clearly right in holding that the trusts are to continue, *at least*, until the remaindermen, respectively, shall have attained the age of twenty-one years; and in so doing he was governed by the decision in *Denton* v. *Denton*, 17 Md. 403.

But we go further, and respectfully submit, that the children of Mrs. Felgner took an equitable estate in fee simple in testator's estate, and that the *trust* exists during their lives, respectively. The trust in favor of Mrs. Felgner was, that the trustees pay to her the *net income* of the estate, and

after her death "*upon trust*" for all and singular her children living at the time of her death.    Nor is this term "*upon trust*" qualified by the following words " *equally and absolutely ;*" they merely designate the *quantity* of the estate as distinguished from its *quality*; this is obvious, because Mrs. Felgner was only entitled to receive of the· *net income* from her share of the residuary estate $6,000 per annum ; whereas her children, by the use of the words "*equally and absolutely,*" are to receive all the *net income*.

By this construction these children will receive the income from a very large fortune; and at the same time hold an estate which is devisable and descendable in the same manner as a legal estate in fee simple, and which may be alieniated, subject to the existing trusts, during ·their natural lives.    *Fairfax* v. *Brown,* 60 Md. 50; *Gunn* v. *Brown (2d appeal),* 63 Md. 96; *Gunn* v. *Brown (3d appeal),* 23 Atl. Rep. 462.

*Thos. Ireland Elliott,* for the guardians.

It is to be noticed that, except as to the property upon which they operated, the sixth and twelfth clauses of William E. Hooper's will are practically identical.    The sixth clause conveys two pieces of house property, one fee simple, the other leasehold.    The twelfth clause has to do only with the residuum of the estate.    But in the indicated intention of the testator, in the manner of enjoyment by the life tenant, and in the ultimate disposal of the estate, the two clauses mentioned are alike.    The evident intention of the testator was to create and protect a life-estate for his daughters, with remainder to their respective children, if any, and the children of any deceased child, *per stirpes ;* and in the event of failure of such children or descendants, then to the other grandchildren of the testator, either nominated by the last will of the daughter so dying, or, in case of no such nomination, then to his grandchildren generally.    Effect should be given to that intention.    *Fairfax* v. *Brown,* 60 Md. 54; *Bailey* v. *Love,* 67 Md. 599; *Larmour* v. *Rich,* 71 Md. 381; *Dulaney* v. *Middleton,* 72 Md. 79.

The remainder, therefore, which had been contingent up to that time, became, immediately upon the death of Grace Felgner, *vested* in her said two children. *Turner* v. *Withers*, 23 Md. 40-41 ; *Demill* v. *Reid*, 71 Md. 188-192 ; *Larmour* v. *Rich*, 71 Md. 382. And not only did the estate vest in these two daughters upon their mother's death, but it vested in them to the exclusion of every one else, even to the exclusion of their own children, if they had then had any. *Thomas* v. *Levering*, 73 Md. 458-460. The single contingency with which we need concern ourselves, is the existence and survival of children of Grace Felgner at her death. Those children might die immediately afterwards, and there can be no doubt that those who would take after them, would take, not under the will, but by descent. The children of Grace Felgner, therefore, took at their mother's death, not an estate for life, but the *whole* estate, and *possession* and *enjoyment* then coalesced. *Fairfax et al.* v. *Brown et al.*, 60 Md. 55-58.

There is nothing in the will providing expressly for the continuance of the trust beyond the life of the life-tenant. The trustees are assigned certain duties to be performed by them in regard to Grace Felgner "during her natural life." What duties have they after her death ? The trustees, and the decree appealed from, say that those duties continue for the children of Grace Felgner. But the will does not *say* so. It says that the children of Grace Felgner living at her death, and the children of any child then deceased, shall take *equally* and *absolutely* ; and this *absolute* taking *then*, is only qualified to the extent "that the issue of a deceased child or children, if any, shall take by representation the share or shares only which their parent or parents, if living, would have taken." And the trust is not to see that the children take in one manner while under twenty-one years, and in another manner after that age, but that they take, upon the death of Grace Felgner, "*equally* and *absolutely*." The words "upon trust" raise no presumption of a continuance of the trust. *Mercantile Trust Co.* v.

*Brown*, 71 Md. 166; *Demill* v. *Reid*, 71 Md. 175; *Larmour* v. *Rich*, 71 Md. 369.

As to the *personalty*, the law itself declares Marie Theresa Felgner competent to take, and this Court can not imply incompetency. *Md. Code P. G. L.*, Art. 93, sec. 142; *McKim* v. *Handy.* 4 Md. Ch. 237; *Carpenter* v. *Bouldin*, 48 Md. 129. Therefore, it would seem to be indisputable that, there being no active duties to be performed by the trustees, after the death of Grace Felgner, and there being no longer any *title* requiring protection by the retention of the legal estate, the purposes of the trust have been accomplished, and there remains nothing to be done but to transfer the legal title of the personalty to Marie Theresa Felgner in her own right, absolutely, and to Edward L. Felgner and Alcaeus Hooper, guardians of Catherine Hooper Felgner, the legal title to the real estate having already been merged with the equitable title. *Thompson* v. *Ballard*, 70 Md. 17.

ROBINSON, C. J. delivered the opinion of the Court.

The questions in these appeals arise upon the construction of the sixth and twelfth clauses of the will of the late William E. Hooper. The testator died in 1885, leaving ten children, four sons and six daughters. By the sixth clause he devises and bequeaths to his four sons a leasehold lot No. 51, and a fee simple lot No. 55, on Charles Street avenue, *upon trust* to permit his daughter, Grace Felgner, to use and enjoy the same, and the *net rents* and income thereof to take during her life, without power on her part to anticipate the payment of such rents and income, or to charge or encumber the trust estate; and upon her death *in trust* for her children living at the time of her death, and their surviving issue. But should no child or descendant of his said daughter survive her, then, with power on the part of his daughter to dispose of said property by last will and testament among any one or more of the testatator's surviving grandchildren, and in default of such disposition or appointment by his

daughter, then the said portion of his estate to be divided equally between the testator's grandchildren then living, and the surviving issue of such grandchildren, absolutely.

After several specific devises and bequests, the testator, by the twelfth clause, directed that all the residue of his estate, real and personal, should be divided into ten equal parts ; one equal part thereof he devised and bequeathed to each of his four sons, absolutely. The remaining six parts he devised and bequeathed to his four sons upon trust for his six daughters, in manner following:

"And as to one-tenth part of my said entire residuary estate upon trust to pay the net income thereof as it shall accrue (except as hereinafter provided) unto my daughter, Grace Felgner, during her natural life, and for her sole and separate use, without power or anticipation, or to charge or encumber the trust estate; and from and after her decease, *upon trust* for all and singular the children or child of the said Grace living at her death, and the issue then surviving of any child or children of the said Grace who may be then deceased, equally and *absolutely*; but so that the issue of a deceased child or children, if any, shall take by representation the share or shares only, which their parent or parents, if living, would have taken."

"In case of any one or more of my said six daughters dying without leaving issue surviving, then I give, devise and bequeath the tenth part or tenth parts of my residuary estate devised above in trust for the benefit of such, my daughter or daughters so dying without surviving issue, unto all and every my grandchildren who shall survive such my daughter or daughters so dying, and the then surviving issue of any of my grandchildren who may have previously departed this life leaving such surviving issue, absolutely and equally *per capita* as to such surviving grandchildren, but by representation as to such issue of deceased grandchildren, who are to take by substitution only what their respective parents would have taken had they survived."

Grace Felgner, the life-tenant, died in 1893, leaving two

children, Marie Theresa, about nineteen years, and Catharine, about thirteen years of age. These were her only children, and both of them were living at the death of their grand-father, William E. Hooper, the testator.

The plain and obvious intention of the testator was to create and protect a life-estate for his daughter, Grace Felgner, with remainder to her children, if any, and the children of any deceased child *per stirpes;* and in the event of the failure of such children or descendants, then to the other grandchildren of the testator, either nominated by will, or in case of no such nomination, then to his grandchildren generally. The trustees, it is clear, therefore, took a legal *estate* in the trust property, the *equitable life-estate* being in Grace Felgner, the testator's daughter, and the *equitable remainder* being in her two children, then living, subject to the contingency of their death before their mother, and sub-ject in case they survived her, to be diminished by the birth and survival of other children of their mother. And the mother having died, leaving as her only children or de-scendants Marie Theresa and Catharine, these two children of the life-tenant answer the description of those entitled in emainder; they answer that description at the time of the hap-pening of the contingency, namely, the death of their mother, without other children or descendants, and they are therefore the only persons who could ever have answered it. And this brings us to the real question in this case. Does the trust created by the will continue after the death of Grace Felgner, the life-tenant, or does the property upon her death vest abso-lutely in her two daughters, both of whom were living at that time? There is nothing, it must be admitted, in the will, providing expressly for the continuance of the trust beyond the life of Grace Felgner, the testator's daughter, nor·is there anything from which it can be fairly implied that the testator meant that it should continue after her death. During her life, certain duties are imposed upon the trustees, the language of the will being, "Upon trust to pay the net income thereof, as it shall accrue (except as herein-

after provided), unto my daughter, Grace Felgner, during her natural life, and for her *sole and separate* use, without power of anticipation or to charge or encumber the trust estate, and from and after her decease upon trust for all and singular the children or child of the said Grace living at her death, and the issue *then* surviving of any child or children of the said Grace, who may be then deceased, *equally and absolutely.*" The testator does not say that the trustees shall after the death of his daughter receive and pay the net income of the trust property to her children or descendants living at that time, for their sole and separate use, nor does he impose any limitation upon the power of the remainder-men to charge or incumber the estate. After her death they are to hold the property in trust for all and singular the children or child of the said Grace living at her death, *equally and absolutely.* Where an estate is given to trustees and their heirs upon trust to receive and pay the net income thereof to one for life, and upon his death, in trust for all and singular his children and the issue of such children living at the death of the life-tenant, the trust ceases upon the death of such life-tenant, for the reason that it remains no longer an active trust. In such cases the Statute of Uses executes the use in those who are limited to take upon the expiration of the life-estate ; or, in other words, the statute transfers the use into possession by converting the estate or interest of the *cestui que trust* into a legal estate, thereby determining the intermediate estate of the trustee. As to the real estate, it is clear, therefore, that upon the death of Grace Felgner, the life-tenant, the trustees, having no longer any active duties to perform, the legal estate was executed under the statute in her two children, and the trust was thereby at an end.

Now, as to the personal property, though it has been said that the object of the statute was to abolish all uses and trusts, yet, as the language of the statute was: "*Whenever any person is seized,*" &c., the English Courts, by a strict construction, held that it did not apply to personal

property, for the reason that one could be said to be *"seized"* of a mere *chattel interest* interest. At the same time, however, it may be considered settled, that a trust in regard to personal property will continue so long and no longer, than the purposes of the trust require. And that when all the objects cf the trust have been accomplished, the person entitled to the beneficial use is regarded as the absolute owner, and as such, entitled to the possession of the property. Under this will the objects and purposes of the trust, namely, that the trustees should pay the net income to Grace Felgner during her life, and for her sole and separate use, without power of anticipation, &c., were fully accomplished, and upon her death the trustees had no longer any active duty to discharge. And this being so, her two children being entitled to the ultimate use, became the absolute owners of the property.

Nor can we agree with the Court below, that the fact of the minority of one of the *cestui que trusts*, is any reason why the trust should continue until she is *sui juris.* The language of the Court in the concluding part of the opinion filed in *Denton* v. *Denton*, 17 Md. 403, may be construed, we admit, as supporting this contention. In that case certain negroes, slaves, were conveyed by deed of marriage settlement to a trustee to hold to the use of the husband and wife during their joint lives, and upon the death of the husband, then to the use of the wife, her heirs and assigns forever. In delivering the opinion of the Court, Judge BARTOL says: " Looking at the provisions of the marriage settlement in this case, we find no sufficient ground for saying that it intended the trust to terminate and the estate to be divested on the death of Mrs. Denton ; on the contrary, the obvious intent and purpose was that the trust should continue for the benefit of her child or children, and the title of the trustee was meant to continue, with the obligation and duty to preserve the property for the benefit, at least until they should become *sui juris.*"

Whatever may have been the language in the marriage

settlement in that case, from which the Court found that it was the intention of the settlor that the trust should continue after the death of Mrs. Denton, with the obligation and duty imposed on the trustee to preserve the property for the benefit of her children until their arrival at age, it is sufficient to say that no such intention can be found from the language of the will before us. We find nothing from which it can be inferred that the testator meant the trust to continue after the death of his daughter, the life-tenant.

The purposes of the trust having been accomplished, and the trustees having no longer any active duties to perform, and Marie Theresa Felgner, one of the daughters, being over eighteen years of age, she is entitled in her own right to her share of the personal estate. And as to the other daughter, Catherine Hooper Felgner, she has, the record shows, guardians legally appointed and qualified, and this being so, such guardians are entitled to receive her share of the personal estate. There can be no reason why the trust should continue merely to allow the trustees to receive the income and pay it over to her guardians. In the case of an ordinary bequest to an infant, the guardians are the proper persons to take the property bequeathed, and where a trust has terminated, and one who becomes thereby the absolute owner of the property is a minor, there is no reason why the guardian should not take and hold the property for the benefit of his ward.

> *Decree reversed and cause remanded*
> *in both appeals.*