## JEREMIAH SCHENCK, Appellant, v. E. B. WICKS, Administrator, Respondent.

TRUSTS—RIGHTS OF CESTUI—DRY TRUST—VESTING OF TITLE—VENDOR AND PURCHASER—LIENS—LIMITATIONS OF ACTIONS.

1. A land contract was duly recorded, and provided that a deed should be executed to the decedent on paymnt of a note for part of purchase price, and that in event of default the agreement should terminate, and the sum paid should be forfeited. Before the note matured the owner executed a trust deed of the premises to secure a note given by him, and on default in payment thereof before decedent's note matured, the land was sold as authorized by the deed, and transferred by mesne conveyances to plaintiff. Defendant's decedent defaulted in the payment of his note, but it was paid and surrendered for cancellation by the grantor under a subsequent agreement. *Held,* that the trust deed constituted a cloud on the grantor's title, which relieved decedent from payment of his note at maturity, and hence his equity was not extinguished by his default.

2. Where a person purchases property from a trustee, with notice of the trust, he is charged with the same trust in respect to the property as the trustee from whom he purchased.

3. A conveyance to a third party of the legal title to real estate by a vendor having a lien on the same to secure the purchase money does not convey the lien, and the party to whom such conveyance is made acquires no rights thereto, either at law or in equity, unless the indebtedness for the purchase money is assigned to him.

4. Where a trustee holds the mere naked title to land, without being charged with the duty of performing anything in relation thereto, the legal title will immediately vest in the cestui que trust under the statute of uses.

Schenck v. Wicks.

5. Where neither plaintiff nor his predecessors in title asserted claim to land adverse to the interest of defendant's decedent until the institution of the present suit to quiet title, a contention that the latter's cause of action as alleged in his counterclaim was barred by the statute of limitations was without merit, since a cause of action did not arise until adverse claim was made.

### Decided June 20, 1901.

Appeal from District Court, Salt Lake County.—*Hon. Ogden Hiles*, Judge.

Suit to quiet title by Jeremiah Schenck against Edward B. Wicks, administrator of the estate of George H. Shaw, deceased. From a decree in favor of defendant, plaintiff appeals.

AFFIRMED.

The plaintiff, who is the appellant, alleges that he is now, and for a long time hitherto has been, the owner and in possession of the premises described in the complaint; that the defendant, as administrator of the estate of George H. Shaw, deceased, now claims an estate or interest in said premises adverse to the plaintiff—and prays that the defendant may be required to set up the nature of his claim, and that the title of the plaintiff may be quieted, and that the defendant be forever enjoined from asserting his claim to said premises. The defendant, in answer to the complaint, and by way of counterclaim and cause of action against the plaintiff, alleges that the said George H. Shaw, in his lifetime, and for more than four years prior to his death, in 1898, was, and defendant since his appointment as such administrator is, the owner, in possession and entitled to the possession, of an undivided one-half interest in said premises, and prays that the plaintiff take nothing by

his complaint, and that it be adjudged that the defendant has an undivided one-half interest in said premises, and that the plaintiff be forever enjoined from asserting any claim thereto adverse to the defendant. The plaintiff, in his answer to defendant's counterclaim or cross complaint, denies the alleged claim of the defendant, and alleges that said counterclaim is barred by the provisions of section 3150, Compiled Laws 1888, which is the same as section 2883, Revised Statutes 1898. A decree in favor of the defendant was entered as prayed for in the answer. It appears from the evidence that on the fourth day of October, A. D. 1890, one Albert J. White, being then the owner in fee of all of lot 5, block 9, plat F, Salt Lake City survey (the same being the premises described in the complaint), contracted in writing with said George H. Shaw to convey to him, for the sum of two thousand dollars then paid by Shaw, and the further sum of three thousand dollars to be thereafter paid, an undivided one-half interest in fee in said land; that said agreement was duly recorded with the county recorder of Salt Lake county on the sixth day of October, 1890, and provided that Shaw should be given immediate possession by White on the execution and delivery of the deed provided for in the contract; that said three thousand dollars was evidenced by a note from Shaw to White, payable in three years, drawing interest at eight per cent per annum, and that by a subsequent agreement between Shaw and White, the note was, on or about the twenty-sixth day of April, 1894, surrendered by White to Shaw for cancellation; that on April 26, 1894, the said Albert J. White and his wife conveyed an undivided one-half interest in said premises to the said George H. Shaw, and in the deed by which the same was conveyed the consideration was stated as follows: "For the sum of one dollar, and in consideration of said Shaw having heretofore complied with all the conditions of a certain agreement, dated October 4, 1890, between the parties hereto." Said agreement

contained a provision that, in case the said Shaw or his heirs or assigns failed to make the payment provided in said agreement within the time therein mentioned, the agreement should cease, and the money paid should be forfeited. On the fifth day of March, 1892, the said Albert J. White and wife executed and delivered to James H. Bacon, trustee, a trust deed which in terms conveyed said premises and the equity of redemption to the trustee to secure a debt evidenced by a promissory note of the grantors, of even date with said deed, for the sum of $3,000, which became due March 3, 1893, and in which it was stipulated that if it was not paid at maturity it should draw fifteen per cent interest from date. The trust deed contained a covenant of warranty, relinquished all homestead and dower rights, and authorized the trustee upon default to advertise and sell at public auction said premises, and convey the same to the purchaser. Upon default of payment by the said White and wife, the whole of said premises were sold and deeded by the trustee, in pursuance of the provisions of the trust deed, to Harvey M. Bacon, a brother of the trustee, on the eighth day of December, 1893, and were afterwards transferred by sundry mesne conveyances to Jeremiah Schenck, the plaintiff. The consideration paid by the said Harvey M. Bacon was $1,000.

*Messrs. Charles S. Zane* and *L. R. Rogers* for appellant.

*George L. Nye, Esq.,* for respondent.

After stating the facts, BASKIN, J., delivered the opinion of the court.

The appellant contends that upon the failure of Shaw, the vendee, under said agreement of October 4, 1890, to pay the note given by him when it became due, on October 4, 1893, his said agreement with White terminated, and that the vendee

forfeited all rights thereunder, as well as the $2,000 paid by him, and that by virtue of the sale and deed to the said Harvey M. Bacon, and the aforesaid mesne conveyance, Jeremiah Schenck, the appellant, became, and now is, vested with the absolute legal title to said premises. As James H. Bacon, trustee, the beneficiaries of the trust deed, and those who acquired title under it, had notice of the agreement of October 4, 1890, between White and Shaw, the trust deed was subject to Shaw's rights under said agreement; and the title acquired by Schenck, the appellant, under the trust deed is subordinate to any interest which Shaw acquired under said agreement. Under the executory agreement of October 4, 1890, Shaw, the vendee, acquired the equitable title to said premises, and the vendor acquired a lien on the equitable interest of the vendee for the payment of the note. Pom. Eq. Jur. 105-372, 1261-1263; Beach, Trusts, sec. 245, note 2. As, however, this lien arose, by operation of law, from the retention by the vendor of the legal title, it ceased to exist in his favor when he became divested of his legal title by the said sale and conveyance of said premises. The deed to Harvey M. Bacon, the purchaser at the sale made in pursuance of said deed of trust, passed to him the legal title to said premises; but, as the agreement between White and Shaw was duly recorded before the deed of trust was executed, the legal title so acquired by the said Harvey M. Bacon was subject to the equitable interest of the vendee under said agreement, unless the vendee's equity became extinguished upon default in the payment of Shaw's note, which occurred before said sale. Under the agreement, the payment of the balance of the consideration and the conveyance of a half interest in said premises were concurrent obligations. The vendee was entitled to a conveyance of a marketable title. The note became due on the fourth of October, 1893, but more than a year before that date the vendor, by making the deed of trust, had created a cloud upon the title

agreed to be conveyed, and that cloud still existed at the ma-
turity of the note.   By reason of that cloud, the vendor was
not at the maturity of the note able to convey a good and
marketable title to the vendee, and afterwards, by permitting
the whole of the property to be sold under the trust deed, al-
lowed the legal title to pass to the said Harvey M. Bacon.
The vendor's lien on the equitable interest of the vendee as
security for the payment of the note depended solely upon the
legal title retained by him; and when he became devested of
that title his lien was extinguished and thereafter he could only
enforce payment by a recovery on the note, and, as the note
was never transferred by him, his lien did not pass by the
deed of trust, or the sale and conveyance made in pursuance
thereof.   Haslam v. Haslam, 19 Utah 1, 56 Pac. 243.   There
was no privity under the trust deed between the trustee, or
those who acquired the legal title under it, and the vendee.
He was under no obligation to pay to either of them the bal-
ance of the consideration of said agreement.   It is a universal
rule that when by the acts of the trustee the legal title to prop-
erty held in trust by him is transferred to a stranger, with
notice of the trust, the latter is thereby substituted as trustee,
and the interest of the *cestui que trust* in the trust property
is not affected by the substitution.

   A cloud on a title is something, such as a mortgage, deed,
or judgment, etc., which shows prima facie some interest in a
third party in or to the property adverse to the person vested
with the real title to the same, or to one having an interest
therein.   1 Rap. & L. Law Dict., tit. "Cloud on Title";
Cooley, Tax'n, p. 779; Warv. Vend., p. 324, sec. 23; Frost v.
Leatherman, 55 Mich. 33, 37, 20 N. W. 705; Lick v. Ray, 43
Cal. 83-88.   Where an instrument upon its face shows prima
facie such an adverse interest in a third party, and is of such a
character as that if put in evidence in an action by the real
owner, or by one having such an interest, to quiet his title, he

would be compelled in defense to prove his own title, it consti-
tutes a cloud which a court of equity, if applied to, will re-
move. 1 Warv. Vend., p. 324, sec. 23; Cooley, Tax'n, p. 780,
and cases cited in note 2; Douglas v. Nuzum, 16 Kan. 515-
519; Lick v. Ray, 43 Cal. 88; City of Detroit v. Martin, 34
Mich. 170, 22 Am. Rep. 512. The deed of trust in question
was an instrument such as the ones mentioned in said decisions,
and rendered the vendor unable to convey to the vendee a
marketable title. In the case of Jeffries v. Jeffries, 117 Mass.
184, the court said: "Hence the propriety and necessity of
the rule in equity that a defendant, in proceedings for specific
performance, shall not be compelled to accept a title in the
least degree doubtful. It is not necessary that he should sat-
isfy the court that the title is defective, so that he ought to
prevail at law. It is enough if it appear to be subject to ad-
verse claims which are of such a nature as may reasonably be
expected to expose the purchaser to controversy to maintain
his title, or rights incident to it. Richmond v. Gray, 3 Allen,
25; Sturtevant v. Jacques, 14 Allen, 523; Hayes v. Harmony
Grove Cemetery, 108 Mass. 400. He ought not to be sub-
jected, against his agreement or consent, to the necessity of
litigation to remove even that which is only a cloud upon his
title." In an opinion by Sharswood, J., in the case of Swayne
v. Lyon, 67 Pa. 436, it is said: "It has been well and wisely
settled that, under a contract for the sale of real estate, the
vendee has the right not merely to have conveyed to him
a good, but an indubitable, title. Only such a title is deemed
marketable; for otherwise the purchaser may be buying a law-
suit, which will be a very serious loss to him, both of time and
money, even if he ultimately succeeds. Hence, it has often
been held that a title is not marketable where it exposes the
party holding it to litigation." In Vought v. Williams, 120
N. Y. 257, 24 N. E. 195, 8 L. R. A. 591, it is said: "A mar-
ketable title is one that is free from reasonable doubt. There

is reasonable doubt when there is uncertainty as to some fact appearing in the course of its deduction, and the doubt must be such as affects the value of the land, or will interfere with its sale. A purchaser is not compelled to take property the possession of which he may be compelled to defend by litigation. He should have a title that will enable him to hold his land in peace, and, if he wishes to sell it, be reasonably sure that no flaw or doubt will arise to disturb its market value. Commissioners v. Armstrong, 45 N. Y. 234,. 6 Am. Rep.·70; Shriver v. Shriver, 86 N. Y. 575; Hellreigel v. Manning, 97 N. Y. 56; Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387; Moore v. Williams, 115 N. Y. 586, 22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844; Swayne v. Lyon, 67 Pa. 436; Dobbs v. Norcross, 24 N. J. Eq. 327."

At the time the trust deed was made, James H. Bacon, the trustee, requested the vendor to transfer the note to him, but the vendor refused to do so. Therefore neither the trustee, nor the beneficiaries of the trust deed, nor the purchasers at the sale thereunder acquired any interest in the note; nor was it transferred afterwards to an innocent third party, for value, but remained in the hands of the vendor until it was delivered to the vendee for cancellation. The cloud on the title agreed to be conveyed, relieved the vendee from his obligation to pay the note at maturity, and until, by operation of law, as hereinafter stated, he became vested with the legal title, he was under no obligation to pay the note; and even then he was only obligated to pay to the owner and holder thereof. Therefore the failure to pay the note at maturity did not forfeit the equitable interest of the vendee, or the $2,000 of the purchase money paid. As by the sale and conveyance under the trust deed the legal title of said vendor to an undivided one-half of said premises was devested, and passed to the purchaser, Harvey M. Bacon, in trust for said

vendee, and Bacon was thereby substituted in place of the vendor as trustee, and as the only beneficial interest which the vendor had under his said agreement was the lien retained by him as security for the payment of the vendee's note, and as the note was not transferred by the deed of trust to James H. Bacon, the trustee named therein, he did not acquire any right to the lien; and as the said Harvey M. Bacon did not acquire any beneficial interest in the subject of the trust, and as trustee was not charged with the duty of performing anything in relation thereto, the trust created by the agreement of October 4, 1890, by Harvey M. Bacon's substitution as trustee, became a simple or dry one, and the statute of uses (27 Hen. VIII. c. 10) which as this court, in Henderson v. Adams, 15 Utah 30, 48 Pac. 348, held is a part of the common law of this state, immediately vested the legal title in Shaw, the *cestui que trust*, to an undivided one-half of said premises. Hooper v. Felgner, 80 Md. 262, 271, 30 Atl. 911; Dodson v. Ball, 60 Pa. 492; Cornwell v. Orton, 126 Mo. 355, 27 S. W. 536; Henderson v. Griffin, 5 Pet. 150, 8 L. Ed. 79; Henderson v. Adams, supra; 2 Beach, Trusts, secs. 555, 557. In Hooper v. Felgner, 80 Md. 271, 30 Atl. 911, the court said: "Where an estate is given to trustees and their heirs upon trust to receive and pay the net income thereof to one for life, and upon his death in trust for, all and singular, his children and the issue of such children living at the death of the life tenant, the trust ceases upon the death of the life tenant, for the reason that it remains no longer an active trust. In such case the statute of uses executes the use in those who are limited to take upon the expiration of the life estate; or, in other words, the statute transfers the use into possession by converting the estate or interest of the *cestui que trust* into a legal estate, thereby determining the intermediate estate of the trustee. As to the real estate, it is clear, therefore, that upon the death of Grace Felgner, the life tenant, the trustees hav-

ing no longer any active duties to perform, the legal estate was executed under the statute in her two children, and the trust was thereby at an end." The only interest acquired by Harvey M. Bacon by the sale and conveyance to him was the undivided one-half of said premises. By said sale and conveyance the said Shaw and Bacon became tenants in common, each holding an undivided half interest in said premises; and by the mesne conveyances from Bacon to the appellant he became the owner, as tenant in common with the said Shaw, of Bacon's interest.

The appellant contends that the counterclaim of the defendant is barred by section 3150 of the Compiled Laws of 1888, which is the same as section 2883 of the Revised Statutes. It is alleged in the complaint, and is not denied, that the said George H. Shaw died in the summer of 1893. It does not appear that during the life of the deceased either the appellant, or the parties through whom he derived his title, asserted or claimed to hold said premises adverse to the said Shaw. On the contrary, it appears from the evidence that in 1898 a one-half interest thereof was assessed to the said Shaw, and one-half to the appellant, and that the latter only paid the amount of the tax levied on his half interest. It does not appear from the record when, if ever, Shaw's interest was disputed before the institution of this suit. Neither Shaw nor his representative had any cause of action against the appellant to quiet title until an adverse claim was made. When made, and not until then, did the cause of action alleged in the counterclaim arise; and, as it does not appear from the record that it arose before the institution of this suit, it is not necessary to decide whether the section of the statue of limitations relied upon by appellant is applicable to the case or not.

As the established facts hereinbefore stated clearly entitle the defendant to the decree rendered, the other assignments

of error are not material, and need not be considered. The decree of the court below is affirmed, with costs.

*Miner, C. J.,* and *Bartch, J.,* concur.