## GRACE B. CHAPMAN *v.* BALTIMORE TRUST COMPANY

[No. 24, January Term, 1935.]

*Decided February 14th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Benjamin L. Freeny,* for the appellant.

*Robert W. Williams,* with whom were *Joseph C. France, Alexander Armstrong, J. Purdon Wright,* and *Ritchie, Janney, Ober & Williams,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

By her deed of September 20th, 1930, Mrs. Grace B. Chapman granted to the Baltimore Trust Company, trustee, $22,000 in cash, to hold upon certain trusts, reserving to herself, however, "the right, during her lifetime, by one or more instruments in writing personally signed by her and delivered to the Trustee, to change, modify, amend and revoke this Deed of Trust in whole or in part, provided, however, that in the event of any amendment hereto the duties, powers and responsibilities of the Trustee shall not be substantially increased without its written consent." Under the deed the trustee was granted full power and authority to invest the money, and directed to disburse and distribute the corpus and income in accordance with the purposes and trusts declared therein. The original deed was amended by a deed of June 13th, 1932, in particulars not material to any question presented by this appeal, and from time to time, acting under the powers reserved to her in the deed of September 20th, the grantor withdrew certain sums from the trust, and by a letter dated September 18th, 1934, she notified the trustee that she had terminated the trust.

On November 2nd, 1934, the trustee filed an *ex parte* petition in the Circuit Court of Baltimore City in which, after stating these facts and announcing that it desired to "retire and resign from said trusteeship," it prayed the court to assume jurisdiction of the trust, and to permit it to resign as trustee that its accounts might be settled, and it filed with the petition a "Corpus Account" and an "Income Account" which purported to show its admin-

istration of the estate. On that petition the court assumed jurisdiction of the trust, but on November 7th, 1934, the grantor named in the deeds demurred to the petition on the ground that the trust had terminated, and that there was nothing left to which the court's jurisdiction could attach.' On November 19th, 1934, the court authorized the trustee to deliver to Mrs. Chapman the trust property in its hands, which was listed in a receipt signed by Mrs. Chapman and referred to in the order, without prejudice to any right which she might have to object to the jurisdiction of the court, and on November 26th, 1934, by its decree of that date, the court overruled the demurrer and again assumed jurisdiction of the trust. This appeal is from that decree.

The jurisdiction of a court of equity to supervise and direct the administration of such a trust as that created by the deed of September 20th, 1930, and the amendment thereto, upon the request of the trustee, cannot be questioned (Acts 1929, ch. 501; *York v. Md. Trust Co.,* 149 Md. 617, 131 A. 829; *Northern Central Ry. Co. v. Keighler,* 29 Md. 579) ; nor can it be doubted, on the other hand, that a court of equity cannot assume jurisdiction of a trust which has been executed, and no longer exists. The real question presented by the appeal, therefore, is whether, when the court signed in this case its order of November 2nd, 1934, the trust estate therein mentioned was in existence. Code, art. 16, secs. 260 and 261, cited in support of the decree, are not in point, for they deal with the retirement of a trustee from an existing and a continuing trust, and not with the discharge of a trustee from a trust which has been completely administered and has ended. Stated more narrowly, the question is, Does a trust such as that created by the deed in issue here terminate instantly upon the receipt by the trustee of a sufficient revocatory order, or does it continue until, whether revoked or not, the trustee has accounted for and transferred the trust property to the persons entitled to receive the same?

In *Denton v. Denton,* 17 Md. 407, quoting from *Hill on Trustees,* the court said: " 'the question as to the duration of the estate of the trustees, can rarely arise where the subject is personal estate; for in that case the whole legal interest is, in general, vested in the trustees by a gift, without any words of limitation, and will continue in them until divested by a legal transfer or assignment.' See, also, *Hanson v. Worthington,* 12 Md. 419. It is undoubtedly true, that 'when a trust has been created in personalty, and all the purposes of the trust have ceased, or are at an end, the absolute estate is in the person entitled to the last use.' *Rice v. Burnett,* Speers, Eq. [S. C.] 579; *Harley v. Platts,* 6 Rich. [S. C.] 315. But this must depend on the plain intent and meaning of the instrument creating the trust." See, also, *Byrne v. Gunning,* 75 Md. 30, 23 A. 1. The same principle is stated in *Perry on Trusts* (7th Ed.) sec. 311, but with this qualification: "But where the trust is at an end, the title is in the person entitled to the last use; and a mere delivery, without other formality, gives such person full and absolute control of the property. Until such delivery the law cannot recognize any equitable interests in the property." That conclusion, while it agrees with a statement in 65 *C. J.,* is contrary to the view announced in 100 *Am. St. Rep.* 103, 26 *R. C. L. "Trusts,"* 56, that upon the termination of a trust, when the trustee has no duty to perform except to transfer the trust property to the person entitled to the last use, his title is at an end and the whole title to the property both legal and equitable is vested in such person. In harmony with the latter view is a summary of the Maryland law found in *Coe's Edition, Alexander's Brit. Stat.* 387, where it is said: "The rule laid down in *Denton v. Denton, supra,* has been affirmed in several later cases. While the Statute of Uses does not apply to personal property, a trust in regard thereto will continue only so long as the purposes of the trust require; and when all of its objects have been accomplished the person entitled to the beneficial use will be regarded as the absolute

owner and as such entitled to the possession of the property."

In *De Bearn v. Winans*, 111 Md. 475, 74 A. 626, 632, it was said: "It has repeatedly been held by this court to be the firmly settled law that where an estate is given to trustees in trust to pay the income to a person for life, and at his or her decease merely to hold the same for the use of other named persons, the trust ceases upon the death of the life tenant, because its purposes have been accomplished. In such case, where the trust property consists of realty, the statute of uses executes the use and vests the legal title in the party to whom the estate was limited at the expiration of the life estate, and a somewhat similar result occurs when the estate consists of personalty, unless there be an apparent intention to the contrary, although the statute of uses is, strictly speaking, not applicable to personal property. *Long v. Long*, 62 Md. 65, 66; *Graham v. Whitridge*, 99 Md. 292, 57 A. 609; *Hooper v. Felgner*, 80 Md. 271, 272, 30 A. 911; *Lee v. O'Donnell*, 95 Md. 546, 52 A. 979." In *Hooper v. Felgner*, 80 Md. 272, 30 A. 911, 912, it was said: "At the same time, however, it may be considered settled that a trust in regard to personal property will continue so long and no longer than the purposes of the trust require; and that, when all the objects of the trust have been accomplished, the person entitled to the beneficial use is regarded as the absolute owner, and as such entitled to the possession of the property." The same thing was held in *Colburn v. Union Infirmary*, 114 Md. 94, 78 A. 817. In *Backus v. Presbyterian Assn.*, 77 Md. 50, 25 A. 856, 861, it is said, "Upon the occurrence of either of the events just mentioned,— that is to say, the attaining the age of thirty years or dying under that age leaving issue,— the trust will immediately terminate as to the particular share, and thereupon the legal estate in the trustee will be divested, and the legal and equitable estates will coalesce and unite, and thence become legal estates in the parties respectively entitled, and those claiming under them. And upon the same principle of construction that we have applied in

construing the ninth clause of the will, it would seem to be clear, that the two grandchildren will take, upon the termination of the trust estates, respectively, the legal, fee simple estate in the realty, and an absolute estate in the personalty, free and discharged of the trust," but in *Hanson v. Worthington*, 12 Md. 439, there is this general statement: "Whatever might be the construction of the will as to the extent of the estate vested in the trustee, if the property devised were realty—and on this question the authorities seem to be somewhat conflicting—here the devise is of personalty, and we entertain no doubt that the fee was vested in the trustee, and could not be devested, except by a transfer by him."

While the uncertainty resulting from these conflicting statements of the law cannot be wholly removed, this much at least appears, that, upon the termination of a trust affecting personal property, any power or authority, granted to the trustee by the trust instrument or declaration, to exercise any discretion in the management of the trust property, is at an end, that the title to such property immediately becomes vested in the person entitled to the last use, and that thereafter the only duty resting upon the trustee with respect to trust property in his hands is that of physically transferring it to the donor or usee. That duty is implicit in the nature of his office (65 *C. J.* 836), and the trust is not fully executed until it is performed, but it is ministerial rather than discretionary in its nature, and it rarely happens that its performance requires the aid of a court of equity.

While a court of chancery has undoubtedly the power to supervise and control the administration of trust estates (65 *C. J.* 676, 677; *Preston v. Safe Deposit & Tr. Co.*, 116 Md. 211, 81 A. 523), there is no sound reason why it should attempt to deal with a trust which has been fully administered and has ceased to exist, where nothing remains to be done but to physically deliver the trust property to the persons entitled to its possession, where no doubt exists as to the identity of such persons or their

right to receive it, and where no question has been raised as to the trustee's acts or accounts.

Applying those principles to the facts stated in the bill of complaint, they fail to state a case of equitable jurisdiction, and the bill should have been dismissed.

It is conceded that, prior to the institution of the suit, Mrs. Chapman, acting under the powers reserved in the deed of trust, had notified the trustee in writing that she had revoked the trust, the trustee filed with the bill what it represented to be a full and particular account of its administration of the trust, and it itemized the trust property in its hands. Under those circumstances, the only duty which remained for it to perform was physically to deliver or assign that property to Mrs. Chapman, and there is no apparent reason why she should be subjected to the expense of a suit in chancery in order that the trustee may have judicial aid in the performance of that simple ministerial act.

The decree appealed from must therefore be reversed.

*Decree reversed, with costs.*