### ROSETTA COLBURN ET AL. *vs.* THE UNION PROTESTANT INFIRMARY OF BALTIMORE CITY ET AL.

*Construction of a Devise—Termination of Trust—Perpetuities.*

A testatrix devised certain property to a trustee, with power to sell and reinvest, and directed him to pay the income to P. during life, but in case P. should not abstain from his intemperate habits, the trustee was directed to withhold the rents and profits and to invest same. Upon the death of P. the trustee was directed to hold the property or its proceeds and the rents and income directed to be invested for the use and benefit of certain named charitable and religious corporations, "the annual rents, profits, interest and income of which I desire to be equally divided among and paid to said institu-

tions as same is received by said trustee." *Held,* that it was not the intention of the testatrix that the trustee, after the death of P., should pay the income of the trust property to the charitable institutions; that the income referred to in the gift to them was the income accumulated during the life of P. and not paid to him; that the trust created by the will ceased upon the death of P., and consequently no perpetuity was created, and that it was then the duty of the trustee, in addition to the *corpus* of the estate, to pay over to the charitable institutions, any profits and income not paid by him to the life tenant.

*Decided November 16th, 1910.*

Appeal from the Circuit Court of Baltimore City (NILES, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Benj. Rosenheim,* for the appellants.

The next of kin, the appellants, have attacked the sixth item on the ground that the trust therein attempted to be created for the benefit of the designated charitable beneficiaries is invalid for the reason that it violates the rule against perpetuities, in that it attempts to create a perpetual trust, and must therefore endure beyond the period of time for which a trust may be legally created. The learned judge has decreed that under this sixth item the purpose of the trust was accomplished upon the death of the life tenant, Paul S. Colburn, and that the estate in remainder created for the benefit of the designated charities is valid, and directed the trustee to pay over to them the fund in his hands.

The opinion of the trial Court impliedly concedes that if the trust were an active trust it would be invalid as a perpetuity, but upholds the trust for the reason that as there

was no active duty in the trustee after the death of Paul S. Colburn, the equitable life tenant, the trustee, after the death of the life tenant, held merely a naked, legal title and the use was, therefore, immediately executed in the remaindermen, the charitable beneficiaries, and there is, therefore, no violation of the rule.

The following cases, among others, show that the rule in Maryland is inhibitory of restraints on the alienation of property interests for a period beyond the period prescribed by the rule, and for this reason alone a perpetual trust which imposes upon the trustee the performance of any duty must be held to violate the rule. *Stannard* v. *Barnum,* 51 Md. 449; *Heald* v. *Heald,* 56 Md. 309; *Collins* v. *Foley,* 63 Md. 162; *Albert* v. *Albert,* 68 Md. 372; *Dulany* v. *Middleton,* 72 Md. 78; *Thomas* v. *Gregg,* 76 Md. 174; *Missionary Society* v. *Humphreys,* 91 Md. 130.

The will before the Court can be examined in vain for any limitation on the duration of the trust for the benefit of the charities, and the testatrix must have intended that it be perpetual, for otherwise she would have made an absolute devise to the charities direct or in some way limited its duration. Therefore, as the trust may and must endure perpetually to effectuate the testatrix's intention, it is void as a perpetuity under the rule laid down in the case of the *Missionary Society* v. *Humphreys,* 91 Md. 130.

The case of *Brown* v. *Reeder* (1908), 108 Md. 653, not only does not impeach the doctrine of the *Missionary Society* v. *Humphreys Case,* but indeed recognizes its force.

In this State charitable or religious trusts are not distinguished from other trusts, and the rule against perpetuities is applied to both alike. 6 *Cyc.,* 905; *Missionary Society* v. *Humphreys,* 91 Md. 131.

The rule is likewise applicable as well to trusts in personalty as in realty. *Gray, the Rule against Perpetuities* (2nd Ed., sec. 202, page 166); *Deford* v. *Deford,* 36 Md. 168; *Missionary Society* v. *Humphreys* (*supra*).

Therefore, even though the directions of the said sixth item of the will creates an equitable conversion of the realty into personalty, the Rule is still applicable and the trust is void.

Whatsoever may be the true conception of the theory and *"modus operandi"* of the rule—whether it be aimed against remote vesting in possession of future interests in property (which is the thesis to the demonstration of which Professor Gray has devoted his energies)—or whether it be regarded as aimed against restraints on alienation of property, and even if it be the case, as Professor Gray asserts (The Rule against perpetuities, section 234 (a), page 700) that "in Maryland alone a considerable series of cases seems to have established for the time, at least, a doctrine contrary to the common law," it is the law of this State that a perpetual trust violates the rule. If this doctrine be erroneous, the error has become too ingrained by perpetuation and unimpeached precedent to be removed other than by legislative enactment.

The sixth item of the will charges the trustees with the exercise of discretion and the performance of duties after the death of Paul S. Colburn and creates an active trust. The learned judge, although impliedly conceding that the trust created by the sixth item is a perpetuity, has upheld it on the ground that no active duties are imposed on the trustee after the termination of the life estate and that therefore the trustee has merely a bare legal title which becomes executed in the "cestuis," the charities, and they therefore take an absolute title or estate to the trust fund. This, it is submitted, is erroneous.

The provisions of this sixth item negative any possibility of a claim that the trustee is not charged with the exercise of any active duties after the death of Paul S. Colburn, the life tenant. Not only must he exercise his discretion as to (*a*) the time when the sale of the trust property shall be made, as to (*b*) the terms of the sale, as to (*c*) the disposi-

tion of the proceeds of the sale, but he is also charged with the active duties of renting out the property, paying off the ground rent, taxes and necessary repairs, and then to dispose of the net proceeds of the rent, if the property is not sold during the lifetime of the life tenant, or if it should be sold. to pay over to the charitable beneficiaries.

It will be noticed that the sixth item authorizes and empowers the trustee to sell, "Whenever in his judgment, he shall obtain a fair price for the same."

And it is further provided that: "From and after the death of the said Paul S. Colburn, I direct said Augustus A. Colburn, to hold the half of said property devised to him in trust or the proceeds of the same invested, etc."

It thereby appears that the trustee is clothed with discretion to determine when, in his judgment, to sell, and it is clear from the second quotation above that the exercise of this discretion by the trustee may take place as well after as before the death of Paul S. Colburn, the life tenant. Therefore, even after the termination of the life estate, there are active duties to be performed and an active discretion to be exercised by the trustee. There is not an iota in the will to compel the trustee to sell, if he sells at all, before the termination of the life estate, but on the contrary, a sale after the termination of the life estate is expressly countenanced.

Moreover, the trustee must determine what is a "fair price" for the property, and this is again the exercise of a discretion, an "active duty."

Not only is the trustee authorized to sell after the death of Paul S. Colburn, but the power of the trustee to invest the proceeds of the sale, if any, is not limited as to the time when it shall be done. Indeed, the testatrix seems to have been extremely solicitous that a due regard be had for the preservation of the safety of her estate, and her intention seems to have been to make the trustee the arbiter, at all times, as to when and how the estate should be conserved,

and to give him authority to take at all times such steps as would save it from depreciation or destruction.

The. testatrix further directed the trustee to pay off the ground rents, taxes and necessary repairs, "and this duty must be performed until said sale is made." As the sale need not take place until after the life tenant's death, as has been shown, here is another "active" duty in the trustee. The trustee is also charged with the duty to "hold" the property and its income, and to divide and pay over the avails to the designated beneficiaries "as the same is received by the said trustee." Attention is called to the fact that the provision is, not that the trustee allow the beneficiaries to receive the avails, but he is expressly required to pay it over. It will be shown later that a trust to collect and apply or pay over is an "active trust."

The learned judge has decided that the sixth item imposed no "active" duties on the trustee after the death of Paul S. Colburn, and that therefore the equitable remaindermen are entitled to call upon the trustee for a transfer of the bare legal title, and the disposition to them thereby becomes absolute. In support of this ruling, the Court referred to only two cases: *Brown* v. *Reeder,* 108 Md. 659; *Lee* v. *O'Donnell,* 95 Md. 538. Both of these cases are readily distinguished from the case at bar.

Thus the following directions or duties imposed on the trustees have been held to make the use an active one, and hence not within the statute, viz.: To pay over the rent or income: *Barker* v. *Greenwood,* 4 Mees. & W. 429; *Leggett* v. *Perkins,* 2 N. Y. 297; *McCosker* v. *Brady,* 1 Barbour Ch. 575; *Barnett's Appeal,* 46 Pa. St. 392, 86 Am. Dec. 503; *Deibert's Appeal,* 78 Pa. St. 296; *Morton* v. *Barrett,* 22 Me. 257, 39 Am. Dec. 575; *Rife* v. *Geyer,* 59 Pa. St. 393, 98 Am. Dec. 351; *Hubery* v. *Harding,* 10 Lea, 392.

To lease the property, collect rents, etc.: *Kellogg* v. *Hale,* 108 Ill. 164.

To apply rents to the maintenance of the beneficiary: *Sylvester* v. *Wilson,* 2 Term Rep. 444; *Doe* v. *Edlin,* 4 Ad. & E. 582; *Doe* v. *Ironmonger,* 3 East, 533; *Vail* v. *Vail,* 4 Paige, 317; *Gerard Ins. Co.* v. *Chambers,* 46 Pa. St. 485; *Porter* v. *Doby,* 2 Rich. Eq. 52.

Or in making repairs: *Shapland* v. *Smith,* 1 Bro. C. C. 75; *Tierney* v. *Moody,* 3 Bing, 3; *Brown* v. *Ramsden,* 3 Moore, 612.

To invest the proceeds or principal, or apply the income of the estate: *Exeter* v. *Odiorne,* 1 N. H. 232; *Ankhurst* v. *Given,* 5 Watts & S. 323; *Vaux* v. *Parke,* 7 Watts & S. 19; *Nickell* v. *Handly,* 10 Gratt. 336.

To dispose of the estate by sale: *Bagshaw* v. *Spencer,* 1 Ves. 143; *Wood* v. *Mather,* 38 Barb. 473.

And for other duties or directions imposed on the trustee, all of which are considered active duties, will be found illustrated and referred to in the fourth volume of *Lawson's Rights, Remedies and Practice,* at page 3373, section 1977.

The duty to collect or receive the rents, profits and income of the estate and pay over the same to persons entitled thereto, is an active duty because it is generally inseparable from the personal control and supervision of the estate by the trustee, and requires that the legal title to the corpus upon which the rents and profits accrue, shall be in the trustee. *Baker* v. *White,* L. R., 20 Eq. 166; *Barker* v. *Greenwood,* 4 M. & W. 421; *Silvester* v. *Wilson,* 2 T. R. 444; *Reynell* v. *Reynell,* 10 Beav. 21; *Symson* v. *Turner,* 1 Eq. Cas. Abr. 383, par. 1; *Stile* v. *Tomson,* 2 Dyer, 210a; 28 *American and English Encyclopedia of Law,* 2nd edition, 926.

The duty to collect and distribute the rents will be implied from general expression in the creating instrument, such as "to hold, manage and control the estate," and it is not necessary in order to give the trustee the legal title to the land that the duty should have been imposed in terms. *Fay* v. *Taft,* 12 Cush (Mass.) 448; *Pugh* v. *Hayes,* 113 Mo. 424; *Roberts* v. *Corning,* 89 N. Y. 225; *Steinhardt* v. *Cunning-*

*ham*, 130 N. Y. 292; 28 *American and English Encyclopedia of Law*, 2nd Ed., 927.

Ever since the early common law, a trust to receive and pay over has been regarded as an "active trust" and this conception has been incorporated in the statutes of those States in which the Statute of Uses has been repealed and particular classes of trusts have been declared by the statute to be valid to the exclusion of all others, such as in New York, California, Michigan, Montana, North Dakota, Oklahoma, South Dakota and Wisconsin. *Remsden, Interpretation and Contest of Wills,* 252.

*The New York Real Property Law,* section 76, defines what are allowable trusts, and subdivision 3 reads: "To receive the rents and profits of real property and apply them to the use of any person," etc. Section 93 provides that the trustee of a passive trust takes no estate. This shows that a trust to receive and pay over is an active trust.

*H. N. Abercrombie* (with whom were *Joseph Packard* and *Robert H. Smith* on the brief), for the appellees.

Under the provisions of Sophia E. Stimpson's will, after the death of the life tenant there was no active duty vested in the trustee and the trust is executed. Before the death of the life tenant the trustee is directed to pay ground rent, taxes, etc., and hold one-half of the net proceeds for the benefit of the life tenant, subject to certain conditions. After his death the trustee is not directed to pay expenses, or to divide, or even to pay at specified periods. The undivided income becomes the property of the remaindermen, in equal shares, "as the same is received."

The duration of a trust estate is to be determined by the purposes of the creator of the trust, and when there is no further duty to be performed by the trustee, and the objects of the trust have been accomplished, the trust will be held to have terminated. *Lee v. O'Donnell,* 95 Md. 538; *Thompson v. Ballard,* 70 Md. 16; *Brown v. Reeder,* 108 Md. 659.

When an estate is given to trustees to pay the income to a person for life and at his death merely to hold the same for the use of other persons named, the trust ceases upon the death of the life tenant for the reason that it remains no longer an active trust. The Statute of Uses in such cases immediately executes the use in those who are limited to take the estate after the death of the life tenant. *Long* v. *Long,* 62 Md. 65, 66; *Hooper* v. *Felgner,* 80 Md. 271, 272; *Graham* v. *Whitridge,* 99 Md. 248, 292; *De Bearn* v. *Winans.* 111 Md. 474.

A devise of the interest of a fund, or the rents and profits of an estate, as a general rule, passes the fund or the estate absolutely, but such construction will not obtain when the intention of the testator appears from the whole will to be different. *Cooke* v. *Husbands,* 11 Md. 492.

The gift of the produce of a fund, without a limit as to time, is a gift of the fund, and the legatee takes a vested interest. *Cassilly* v. *Meyer,* 4 Md. 1. To the same effect is *Merrill* v. *Am. Baptist Missionary Union,* 73 N. H. 414.

The case of *Missionary Society* v. *Humphreys,* 91 Md. 131, much relied upon by the appellants, is entirely dissimilar in its essential facts from the present case, and the decision therein has, therefore, no application.

On the question of perpetuity, attention is called to the following cases: In *Bennett* v. *Humane Impartial Society,* 91 Md. 10, it was said: "If there is no trust, there is no perpetuity which the law condemns." *Trinity Church* v. *Baker,* 91 Md. 539: Bequest to an incorporated church, "to be invested in safe securities and the annual income applied as follows: As to $2,000 thereof to the support of the pastor, etc." Held good. *Erhardt* v. *Baltimore Monthly Meeting, etc.,* 93 Md. 669, holds valid a gift "in trust to hold the same, etc., and apply the income for the use of the school, etc."

Other cases as to gifts of income are: *England* v. *Prince George's Parish,* 53 Md. 466; *Eutaw Place Baptist Church* v. *Shively,* 67 Md. 493; *Peter* v. *Carter,* 70 Md. 140; *Hal-*

*sey* v. *Convention, etc.,* 75 Md. 275; *Woman's Foreign Missionary Society* v. *Mitchell,* 93 Md. 199; *Baltzell* v. *Church Home, etc.,* 110 Md. 244.

BURKE, J., delivered the opinion of the Court.

Sophia E. Stimpson, of Baltimore City, an unmarried woman, died on the 17th day of March, 1878, leaving a last will and testament duly executed to pass real and personal property in this State. The will was admitted to probate by the Orphans' Court of Baltimore City. In this will Doctor Augustus A. Colburn was named as sole executor, and he was also appointed trustee of a certain portion of the testatrix's estate. Doctor Colburn died, and letters *de bonis non* with the will annexed upon the estate of Miss Stimpson were granted to Paul S. Colburn and George G. Hooper, both of whom having died, letters were granted upon her estate to Charles J. Bouchet. George G. Hooper was appointed trustee in the place of Doctor Colburn, and upon the death of said trustee, William G. Towers was by appropriate proceedings appointed trustee in the place and stead of said Hooper, and now holds subject to the order of Court the sum of $2,386, derived from the sale of the property mentioned in the sixth item of Miss Stimpson's will. Mr. Towers as trustee filed this bill for the construction of that item of her will, and has made the Charitable Corporations named therein, the administrator of Miss Stimpson, and certain of her collateral relatives, who now claim the money in his hands, defendants. The bill states that he is in doubt whether by a true construction of the sixth item of the will the bequests therein contained constitute a void trust, or a continuing trust, or an absolute disposition of the property to the corporations named.

The sixth item of the will is here transcribed: "Item Sixth—I hereby devise and bequeath to Doctor Augustus A. Colburn, of Baltimore City, absolutely, one undivided half part of my leasehold lot and warehouses situated thereon

known as 370 W. Baltimore street in the City of Baltimore
which is subject to a yearly rent of one hundred and fifty
dollars ($150.00) and I further devise and bequeath to said
Augustus A. Colburn the other undivided half part of said
lot and warehouse to be held in trust for the use and benefit
of my nephew Paul S. Colburn for and during his lifetime
and I hereby authorze and empower said August A. Colburn,
trustee, to sell and convey the said half part of said lot and
house devised to him in trust whenever in his judgment he
can obtain a fair price for the same and I desire that the
proceeds of such sale shall be invested in ground rents or
other good and permanent securities to be held by him in
trust for the use and benefit of the said Paul S. Colburn for
and during his lifetime and until said sale is made I desire
said trustee to rent out the whole of said property and collect
annually the rent for the same and after paying off the
ground rent, taxes and necessary repairs to hold one-half of
the net proceeds of said rent for the use and benefit of said
Paul S. Colburn and to pay the same or the incomes and
profits arising from proceeds of sale of said trust property
to Paul S. Colburn during his lifetime.   But this trust in
favor of Paul S. Colburn is made upon this condition that
no part of said rents or of the incomes and profits arising
from the proceeds of said trust property shall be paid by said
trustee to my said nephew, Paul S. Colburn, so long as he
continues to indulge in the use of intoxicating drink, and
said trustee is directed to withhold from said Paul S. Col-
burn the payment of any of said rents and incomes and
profits until he is satisfied that my said nephew has given
evidence of a permanent reformation in his habits of intem-
perance and if such reformation should never take place then
in that event said trustee is directed to keep safely the rents
and incomes and profits arising from said trust property and
loan the same out from time to time on good security until
the death of said Paul S. Colburn, and from and after the
death of said Paul S. Colburn I direct said August A. Col-

burn to hold the one-half of said property devised to him in trust or the proceeds of the sale of the same invested as hereinbefore directed together with any of the rents, incomes and profits thereof which he is directed to loan out during Paul S. Colburn's lifetime, for the use and benefit of the Union Protestant Infirmary of Baltimore City, the Board of Foreign Missions of the Presbyterian Church of the United States, The Maryland Bible Society and the Presbyterian Board of Relief, for disabled ministers and the widows and orphans of deceased ministers, the annual rents, profits, interest and income of which I desire to be equally divided among and paid to said institutions as the same is received by said trustee."

In the construction of wills it is the duty of the Court to ascertain the intention of the testator, and that intention, as gathered from the four corners of the will read in the light of surrounding circumstances existing at the date of the will is to prevail, unless it contravene some positive principle of law, or be frustrated by some unbending rule of construction assigning an inflexible meaning to particular words.

In *Woman's Foreign Missionary Society* v. *Mitchell,* 93 Md. 202, the rule is stated by JUDGE. McSHERRY in language which may be appropriately applied to the attempt made in this case to frustrate the evident intention of Miss Stimpson with respect to the fund involved in this controversy.

"The cardinal canon," said the Judge, "around which all others centre is this, that the intention of the testator when ascertained from the whole instrument, or from the instrument as read in the light of surrounding circumstances existing at the date of its execution, must be given effect if that intention does not antagonize or conflict with some rule of law or property. At the threshhold we are met face to face by the fact which stands out prominently, that the attempt made under the second of the consolidated bills is to strike down the intention of the testatrix, though that intention ought to be gratified if it'is legally possible to do so. If the

collateral kindred who filed that bill succeed in getting the property disposed of by the residuary clause just quoted, they will get it, not because the testatrix wished them to have it, but in spite of the obvious fact that she did not want them to possess it at all. Her intention would be defeated instead of being respected."

It is contended by the appellants that the sixth item of the will creates a trust, after the death of Paul S. Colburn, the life tenant, in favor of the charitable corporations mentioned, and that that trust is void, because there is no limit to its duration. In our opinion the discussion of the rule against perpetuities has no proper place in this case, nor is it necessary to determine what constitutes "active duties" imposed upon trustees, because as we understand Miss Stimpson's will she created no trust after the death of Paul S. Colburn in the property mentioned in the sixth item of her will. If, therefore, there be no trust, there is no perpetuity to be condemned.

"It is obviously essential to the creation of a trust, that there should be an *intention* of creating a trust, and, therefore, if upon a consideration of all the circumstances, the Court is of opinion that the settlor did not mean to create a trust, the Court will not create a trust when none in fact was contemplated." 1 *Lewin on Trust and Trustees,* 113.

We said in *Bennett* v. *Humane Imp. Socy.,* 91 Md. 19: "A trust may be created either by the use of appropriate technical words which, of their own proper vigor, indicate that a trust was designed to be raised; or, in the absence of such words, a trust may be created by other language when the purpose to establish it is otherwise sufficiently apparent. In both instances, however, it always becomes a question of intention as to whether a trust exists. If there be a manifest design to establish a trust then a trust will be declared though no apt technical words be employed; and if there be an equally manifest design not to establish a trust, then no

trust will be declared though the words employed would, but for the contrary intention, be sufficient to create a trust."

In *Pratt* v. *Sheppard & Enoch Pratt Hospital,* 88 Md. 627, JUUDGE McSHERRY said: "If it be uncertain as to whether there was an intention to create a trust, it is obviously not the province of the Court to engraft a trust upon the gift."

The lower Court decreed that the purpose of the trust created by the sixth clause of the will of Miss Stimpson was terminated upon the death of the life tenant, and that the estate in remainder by that clause passed absolutely to the corporations therein mentioned, and the trustee was directed to pay over the fund in his hands representing the trust estate formerly held for the said life tenant to the four cor-porate bodies in equal shares.

Obviously, what the testator said in her will is the best evidence of her intention. Turning now to the will we find that the subject matter of the bequest made by the sixth item thereof was a leasehold lot and warehouse located in the city of Baltimore. This lot was subject to a yearly rent of one hundred and fifty dollars. She devised and bequeathed to Doctor Colburn, absolutely, one undivided half part of this lot and warehouse. The other undivided one-half part there-of she devised and bequeathed to Doctor Colburn to be held in trust for the use and benefit of Paul S. Colburn, her nephew, for and during his life. She empowered the trustee to sell and convey the half part of said lot and warehouse held in trust whenever in his judgment he could obtain a fair price for the same, and she desired that the proceeds of such sale should be invested in ground rents or other good securi-ties to be held by him in trust for the use and benefit of her said nephew during his life, but until the sale should be made the trustee was required to rent the whole property and col-lect the annual rent from the same, and after paying the ground rent, taxes and necessary repairs, to hold one-half of the net proceeds of the rent for the use and benefit of Paul

S. Colburn, and to pay the same, or the incomes and profits arising from the proceeds of sale of the trust property to him during his life. Paul S. Colburn, the equitable life tenant, as appears from the will was addicted to the excessive use of intoxicating drink, and the testatrix declared that the trust in his favor was made upon this condition "that no part of said rent or the incomes or profits arising from the proceeds of said trust property shall be paid by said trustee to my said nephew, Paul S. Colburn so long as he continues to indulge in the use of intoxicating drink, and said trustee is directed to withhold from said Paul S. Colburn the payment of any of said rents and incomes and profits until he is satisfied that my said nephew has given evidence of a permanent reformation in his habits of intemperance, and if such reformation should never take place then in that event the said trustee is directed to keep safely the rents and incomes and profits arising from said trust property and loan the same out from time to time on good security until the death of said Paul S. Colburn."

From and after his death, the trustee was directed to hold the trust property devised to him in trust, or the proceeds of the sale of the same invested "as hereinbefore directed together with any of the rents, incomes and profits thereof which he was directed to loan out during Paul S. Colburn's lifetime, "for the use and benefit of the corporate charitable organizations named, *"the annual rents, profits, interest, and income of which I desire to be equally divided among and paid to said institutions as the same is received by said trustee."*

It is upon the words which we have italicized that the contention is made that a trust was created as to the property bequeathed to these institutions, and that the trust is void, because it is repugnant to the rule against perpetuities. The trust created in favor of Paul S. Colburn for life is clear and specific. The trustee was not bound absolutely to pay over to him the rents, income, and profits coming into his

hands from the trust property. He was expressly authorized to withhold such payments until he was satisfied that the life tenant had "given evidence of a permanent reformation in his habits of intemperance." It was, therefore, contemplated by the testatrix that at the death of the life tenant, the trustee, in addition to the *corpus* of the trust estate, might have in his hands rents, profits and income received by him as trustee, and not paid over to the life tenant. These she likewise directed by the language italicized should be equally divided among the institutions named in her will. This we think is the plain meaning and intention of the testatrix. It, therefore, follows that upon the death of Paul S. Colburn, the life tenant, the trust created by the sixth item of Miss Stimpson's will was at an end, and that the fund in the hands of the appellant belongs absolutely to the institutions named in that clause of her will, and should be paid to them as directed by the decree of the lower Court.

The appellant now has no title to, or interest in the property or funds received by him in his capacity as trustee, and his duty is to pass the same over to said institutions. The only trust created by the sixth item is one in favor of Paul S. Colburn for life and after his death the testatrix intended that the legatees in remainder should take absolute legal estate in the property bequeathed to them. This case falls directly within the rule stated by JUDGE SCHMUCKER, in *Prince DeBearn* v. *Winans,* 111 Md. 474: "It has repeatedly been held by this Court to be the firmly settled law that where an estate is given to trustees in trust to pay the income to a person for life and at his or her decease merely to hold the same for the use of other named persons, the trust ceases upon the death of the life tenant, because its purposes have been accomplished. In such case where the trust property consists of realty, the statute of uses executes the use and vests the legal title in the party to whom the estate was limited at the expiration of the life estate, and a somewhat similar result occurs when the estate consists of personalty,

unless there be an apparent intention to the contrary, al-
though the statute of uses is, strictly speaking, not applicable
to personal property."

> *Decree affirmed, the costs above and below
> to be paid out of the fund.*