C. J. JONES AND WIFE V. JAS. B. GOFF.

(Case No. 1857.)

1. HOMESTEAD.— The husband and wife are not only unable to burthen the homestead by contract with an ordinary lien, but they can make no conveyance of it with conditions of defeasance.

2. SAME.— The homestead cannot be made the subject of an executory contract for its sale by the husband and wife.

3. SAME — EXECUTORY CONTRACT.— The husband and wife, while building a new home on lots in a city contiguous to the residence owned and then occupied by them, negotiated for a sale of the old home place.  By executory contract in writing the husband bound himself, in consideration of a cash payment, and of deferred payments secured by notes, to convey to the appellee the old home.  The contract was signed by the wife, and the certificate of

acknowledgment was in the usual form prescribed by statute. Tender of the deferred payment was made. *Held:*

(1) The contract to convey could not be enforced.

(2) The declaration of the wife, necessary as a part of the certificate of her acknowledgment, " that she did not wish to retract it," is applicable to executed contracts only.

(3) Such a declaration in signing an executory contract for the sale of her homestead is, in effect, only her declaration that she does not wish to retract the written promise to convey, then signed by her.

(4) When the deferred payment was tendered on the executory contract, thus signed by her, the law protected her in the right to retract her promise to convey, and the courts cannot enforce its observance.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

Appellee brought suit against appellants Charles G. Jones and wife:

1. For the reformation of an agreement executed by appellants January 8, 1883, whereby they agreed to convey to appellee certain land in Austin city, so as to correct an alleged mistake as to quantity; and

2. To compel specific performance of the agreement to convey, after reformation thereof might be granted, or, if reformation was denied, then according to the terms of the instrument; and

3. As against appellant Charles G. Jones for damages: (*a*), for failure of appellee to get the quantity of land in case of refusal of court to grant reformation; and (*b*) also for breach of contract, if specific performance should not be decreed; and (*c*) for withholding premises, u.w, occupancy, etc. Appellants excepted generally and specially, pleaded general denial, that the land was part of their homestead, and that the wife had not executed the contract in manner required by law. Decree for specific performance of the contract according to its terms without reformation, and giving appellee possession, and vesting title, subject to vendor's lien in favor of appellants, in appellee.

The court filed the following

#### FINDINGS OF FACT:

1. The defendants are, and were long prior to January 8, 1883, husband and wife, and had their homestead at and prior to that date on lots 7, 8, 9 and 10 of block 134, in Austin city. Wilson Green owned lots 11 and 12 of said block, which lots owned by Green were the west two lots on the north half of block, and fronted on south side of College avenue.

The ordinary front of city lots on that tier of blocks is forty-six

feet; in block 134 there was an excess of about ten feet. The dwelling-house of defendants was built principally on lot No. 9, but extended about ninety-six feet east from east line of lot No. 11 (the east line of Green's lots). Kitchens and stables were also on lots Nos. 9 and 10, not extending beyond ninety-two feet from Green's line.

Jones and wife, in January, 1883, were proposing to build a new house on the lots 7 and 8, and did proceed to build it. At this time it is nearly finished, but it is not yet occupied as a residence.

2. After negotiations (testimony to which is excluded as irrelevant), on January 8, 1883, upon the cash payment to them of $100 by plaintiffs, defendants executed the contract described in the pleadings, the defendant Cammie Jones signing and acknowledging same on privy examination before E. W. Shands, a notary public, the certificate of acknowledgment being regular and as prescribed by the statutes.

By the contract defendants acknowledged the receipt of $100 paid by plaintiff in part consideration for ninety-two feet, being bounded on the west by property of Wilson Green, and running back southward to the alley in center of said block, which ninety-two feet of ground, with the improvements now there, they agreed to convey to Goff (plaintiff) by warranty deed, and to deliver possession on the 8th of June, 1883, on Goff's paying defendants the additional sum of $500, and executing his two promissory notes for $1,050 each, bearing ten per cent. interest (interest payable semiannually), one payable in one year, the other in two years, vendor's lien to be reserved. It was further stipulated that, in case the new house contemplated to be built by defendants on the lots adjoining property sold on the east should not be finished by June 8th, the execution of the contracts to be deferred one month, dates, etc., to be so postponed.

3. There was testimony tending to show that, in the privy examination of Mrs. Jones, the contract was not fully explained, and as prescribed by statute, although she at the time stated that she understood its contents. The testimony showed that the plaintiff (Goff) had no notice whatever of the irregularity, if any, in the privy acknowledgment. (This subject was opened in the testimony by plaintiff.)

4. After the execution of the contract plaintiff was allowed access to the land described (except that defendants occupied the houses); he transplanted shrubbery in it, placed water pipes, and dug in part trenches for foundation of a house he was proposing to build.

5. Defendants did not complete their contemplated new house by June 8th, and on Saturday, July 7th, Teagarden, agent of Goff, tendered to defendant Charles G. Jones $500 and two notes for $1,050 each, due in one and two years, in accordance with written contract of January 8, 1883. Such tender was made under contract of January 8, 1883. Goff was, at the time, absent, and left money and notes with Teagarden, to be delivered to the defendants. Teagarden also furnished a blank deed for the land as described for signature. Defendants would not receive the money or notes.

6. Subsequently, Jones and wife declined making a deed to plaintiff for said land, or to deliver possession. Suit herein for specific performance was filed August, 1883, and in a few days after suit the attorney for defendants tendered back to plaintiff the cash payment made by him and interest. This was refused.

7. Plaintiff deposited with the clerk of this court, before trial began, and, on trial, tendered to defendants $500 in gold coin, and tendered the two notes, identified by the witness Teagarden as the same tendered by him to defendants July 7, 1883, which money and notes remain in the possession of the clerk of this court.

8. The privy examination of the defendant Cammie A. Jones was taken in the house on (in principal part) the said ninety-two feet, and in her testimony she stated that she did not know how far east the ninety-two feet extended, or she would not have signed the deed.

9. The prices of good building sites in Austin have increased over twenty-five per cent. since January 8, 1883, and there was testimony tending to show that the ninety-two feet of the block 134 was worth, at date of trial, $4,000.

10. It was understood by the defendants that the old building was sold, and that, on specific performance being secured, no opposition is made by defendants to the plaintiff moving the buildings, as well as the parts extending east of his line, as that upon his purchase.

11. The testimony showed that the rental value of the ninety-two feet described in the contract, including the old buildings, as they stood, partly on the ninety-two feet purchase, and partly on (over) the purchase, since July 8, 1883, was $25 per month.

### CONCLUSIONS OF LAW.

1. That the contract of January 8, 1883, and the certificate of privy acknowledgment of the defendant Cammie Jones, is legal and binding on the defendants.

2. That the certificate of privy acknowledgment being regular,

and it appearing that plaintiff had no knowledge of any irregularity in the acknowledgment, that the defective proceedings, if any, in the privy examination, do not affect the plaintiff.

3. That in consequence of said contract and the complete compliance on the part of Goff, in the tender of the money and notes on January 7, 1883, Goff is entitled to specific performance.

4. Decree will be rendered for specific performance of said written contract according to its terms.

*Walton & Hill*, for appellants.

That the wife was not bound by the executory contract, they cited: Const. of Tex., art. 16, sec. 50; R. S., arts. 548, 552, 560, 4310, 4311, 4313. (For former law see Const. 1845, art. 7, sec. 22; Pas. Dig., art. 1003; Hart. Dig., art. 174, act April 30, 1846; Const. 1869, art. 12, sec. 15.) Whart. on Spec. Perf., sec. 88; sec. 366, note 2; Whart. on Contracts, 177, 178; 5 Wait's Actions and Defenses, 783, sec. 8.

As to statutory word "conveyance:" 1 Bouv. L. D., verb. Conveyance; McKabe v. Heirs of Hunter, 7 Mo., 357.

Where husband and wife attempt to act by power of attorney: 54 Cal., 496; Martindale on Conv., §§ 82, 83.

*James B. Goff*, for himself.

That there was no error in overruling defendants' exceptions, he cited: R. S., arts. 556, 561, 4310, 548, 554, 559, 560; Houghton v. Marshall, 31 Tex., 196; Cross v. Everts, 28 Tex., 531; Farley v. Palmer, 20 Ohio, 223; Dankel v. Hunter, 61 Penn., 384; Wait's Actions and Defenses, 2, 763; Waterman on Spec. Perf., §§ 88, 368, 369, 371; Clopton v. Martin, 11 Ala., 187; Brown v. Lampton, 25 Vt., 258; Philpot v. Elliott, 4 Md., 273.

That the contract was legal, binding, and should be enforced, he cited: Davis v. Kennedy, 58 Tex., 516; Callahan v. Patterson, 4 Tex., 61; Hartley v. Frosh, 6 Tex., 215; Shelby v. Burtis, 18 Tex., 644; Norton v. Nichols, 35 Mich., 150; Chauvin v. Wagner, 18 Mo., 531; Thomas v. Meier, 18 Mo., 573.

That he was entitled to specific performance, he cited: Davis v. Kennedy, 58 Tex., 516; Callahan v. Patterson, 4 Tex., 61; Hemming v. Zimmerschitte, 4 Tex., 165; Vardeman v. Lawson, 17 Tex., 15; Houghton v. Marshall, 31 Tex., 196; Story's Eq. Jur., § 715; Dankel v. Hunter, 61 Penn., 384.

That the right to specific performance was not affected by any homestead right, he cited: R. S., arts. 560, 548, 554, 559, 556, 561;

Secrest *v.* Jones, 21 Tex., 121; Hemming *v.* Zimmerschitte, 4 Tex., 165; Vardeman *v.* Lawson, 17 Tex., 15; Patton *v.* King, 26 Tex., 685; 2 Story's Eq. Jur., § 715; Scarborough *v.* Arrant, 25 Tex., 132; Miller *v.* Alexander, 8 Tex., 36; Estes *v.* Browning, 11 Tex., 242; Callahan *v.* Patterson, 4 Tex., 61; Stewart *v.* Mackey, 16 Tex., 56; Sampson *v.* Williamson, 6 Tex., 109; Gee *v.* Moore, 14 Cal., 472.

WATTS, J. COM. APP.— This is a suit against the husband and wife to compel the specific performance of an executory contract to convey a part of the homestead. The contract consisted of a bond for title duly executed by both husband and wife, and privily acknowledged as prescribed by law, for the conveyance of her separate property or homestead. After hearing the evidence the court below decreed a specific performance, notwithstanding it clearly appeared that the property constituted a part of the homestead, and that fact was interposed as a defense.

Now the important question to be determined is as to the power of the court to decree a specific performance, as against a married woman, of an executory contract for the conveyance of all or a portion of the homestead, when she refuses to convey in accordance with the contract.

Elsewhere it is well established that the executory contract of a married woman for the sale of her real estate, although executed with the assent of her husband and for a valuable consideration, is not enforcible in a court of equity. Field *v.* Moore, 19 Beav., 176; Lane *v.* McKeen, 15 Me., 304; Berrett *v.* Oliver, 7 Gill & J. (Md.), 191; Clarke *v.* Reins, 12 Gratt., 103; Pilcher *v.* Smith, 2 Head (Tenn.), 209; Carr *v.* Williams, 10 Ohio, 310; Waterman on Specific Performance of Contracts, § 127, and note.

In the same work, page 725, the author says: "Where a married woman enters into a covenant to convey real estate owned by her in her own right, which she afterwards refuses to do, the aid of a court of equity may be invoked to compel money advanced upon the purchase price, and the value of permanent improvements made by the vendee on the premises, less the value of the use of such premises, to be refunded."

Our constitution declares, "nor shall the owner, if a married man, sell the homestead without the consent of the wife given in such a manner as may be prescribed by law." And in speaking of creating mechanics' liens upon the homestead, the constitution says that the contract must be in writing, "with the consent of the wife given in the same manner as is required in making a sale and conveyance of

the homestead." While art. 560 of the Revised Statutes provides that "The homestead of a family shall not be sold and conveyed by the owner, if a married man, without the consent of the wife. Such consent shall be evidenced by the wife joining in the conveyance, and signing her name thereto; and also by her separate acknowledgment thereof, taken and certified to before the proper officer, and in the mode pointed out in chapter 2, title lxxxvi."

The form given by statute for the acknowledgment of a married woman requires that she shall be examined by the officer privily and apart from her husband, and after having the instrument fully explained, she, in the language of the form, "acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, *and that she did not wish to retract it.*"

It is a most conclusive proposition that the separate property of a married woman, and the homestead, if the owner be a married man, can only be sold and conveyed in the manner prescribed by law. The homestead, too, is hedged about with additional limitations that do not ordinarily appertain to the separate property of the married woman. For instance, the homestead is not subject to forced sale to pay debts, with certain exceptions. The husband and wife cannot impose an ordinary lien upon it by contract. Nor can they make a conveyance of the homestead with conditions of defeasance. These are limitations and restrictions imposed by the constitution, and are not subject to legislative control.

The object, purpose and intent of the organic law is to protect the wife in the homestead against the improvidence of the husband as well as the rapacity of the creditor.

So long as it remains the homestead of the family, there can be no conveyance of it except as prescribed by law. And here we are met with the unequivocal declaration that the homestead shall not be "sold" and "conveyed," without the wife joins in the "conveyance," by signing her name thereto, and by acknowledging the same privily and apart from her husband.

One of the most important as well as essential elements in the privy acknowledgment is that the married woman, after being informed of the nature, etc., of the conveyance, and after acknowledging, or rather declaring, it to be her act and deed, must, to give it validity, declare "that she does not wish to retract it."

Although she may have received the purchase money, and signed the deed, and even gone so far as to declare to the officer that it is her act and deed, yet if she should then declare her wish to "retract

it," that would conclude the matter,— as to her it would be no conveyance.

This important and controlling fact should be borne in mind, that in the sale and conveyance of the homestead, up to the very last moment before the privy examination is concluded and the title passes, the married woman may absolutely defeat the conveyance by declaring her wish to retract all that had been done by her in the matter.

With us the power to sell or otherwise dispose of the homestead is derived from the constitution and statute; the former declaring that it shall not be disposed of except as prescribed in the latter. The statute makes no provisions whatever for the wife to enter into agreements or executory contracts to convey the homestead at some future time. That is not one of the modes provided by statute in which she may divest herself of the homestead right.

The *sole* and *only* mode prescribed by statute is by "conveyance," in which she joins the husband, and which she acknowledges privily and apart from him. To the word conveyance, as used in the statute, must be assigned its ordinary signification; that is, a writing by which property is conveyed from one to another. As before remarked, the statute does not include agreements to convey, but conveyances only.

In Alabama it has been held that a married woman has no authority, under the statutes of that state, to enter into an executory agreement to sell either her separate estate under the statute, or the homestead occupied by herself and husband; and that no attempted conveyance of either is binding on her unless executed with due formality, and in substantial compliance with the statute. And for these reasons the courts of that state refuse to enforce the specific performance of such executory contracts. Jenkins *v.* Harrison, 66 Ala., 345; Butts *v.* Broughton, 72 Ala., 294; Gardner *v.* Moore, Albany Law Journal, vol. 30, No. 24, p. 477.

Here, as there, the married woman's power to convey is derived from the statute, and the authority to make executory contracts to convey the homestead is not provided for by the statute, and such contracts, therefore, being made without authority, fall under the condemnation of the organic law. Such contracts as to the married woman are void and not enforcible.

Again, as has been seen, up to the last moment before the privy acknowledgment is concluded, the married woman has the right to retract whatever she may have done toward the conveyance of her homestead, and thereby defeat the conveyance. The legal effect of

the acknowledgment is that she joins in the conveyance of the property, declares that such conveyance is her voluntary act, and that she did not wish to retract it. Apply this acknowledgment to an executory contract for the conveyance of the homestead, and it is altogether different. The married woman consents, not to a conveyance, but a contract to convey. She joins not in a conveyance, but an agreement to convey some time in the future. She does not declare that she wishes not to retract the conveyance, but that she wishes not to retract the agreement to convey.

Up to the last moment before the title passes, the married woman may, by retracting what she contemplated doing, retain it.

Obviously that essential element in the conveyance of the homestead, *i. e.*, the right of the wife to retract, is wanting in an executory contract to convey, and where she refuses to carry out such contract, it is beyond the power of the court to supply that essential element.

Our conclusion is that the judgment ought to be reversed and the cause remanded.

Reversed and remanded.

[Opinion adopted February 2, 1885.]