## Staley & Barnsdall v. W. L. Derden.

### Decided October 16, 1909.

**1.—Contract—Mineral Rights—Realty.**

Petroleum oil which has not been taken from the land is a part of the realty, and a contract which relates to the boring and operation of wells for the purpose of procuring and severing such oil from the land is a contract pertaining to real estate. A contract concerning the boring and operation of oil wells considered and held to be a conveyance of an interest in land.

**2.—Jurisdiction—County Court—Interest in Land.**

Petroleum oil which has not been severed from the land being a part of the land, the County Courts are without jurisdiction to grant injunctions affecting contracts for the future production of the oil.

**3.—Same—Amount in Controversy.**

In order to confer jurisdiction on the County Court to enforce a contract as to oil which is to be produced after the suit is filed, it is necessary to allege that the value of such oil would be more than two hundred and less than $1,000.

Appeal from the County Court of Navarro County. Tried below before Hon. J. N. Blanding.

*Richard Mays,* for appellants.—The court erred in overruling defendants' plea to the jurisdiction, wherein it was urged by defendants that the subject matter of plaintiff's petition and the relief sought involved an adjudication of the title and right to land and realty, con-

cerning which the County Court and the judge thereof was without jurisdiction and power to determine. Constitution, art. 5, sec. 16; Rev. Stats. of 1905, art. 1157; Scripture v. Kent, 1 W. & W., sec. 1056; Day v. Chambers, 62 Texas, 190; Gascamp v. Drews, 2 W. & W., sec. 95; 4 Pomeroy, Eq. Jur., secs. 1402 and 1378; 2 Pomeroy, Eq. Jur., sec. 171; 5 Pomeroy, Eq. Jur., sec. 5; Bean v. Toland, 1 W. & W., sec. 1022; Bohl v. Brown, 2 W. & W., 541; Frichott v. Nowlin, 50 S. W., 164; 2 High on Injunctions, sec. 1120; Benavides v. Hunt, 79 Texas, 390, 385; Southern Oil Co. v. Colquitt, 28 Texas Civ. App., 292; Cowan v. Hardeman, 26 Texas, 217; Ditch Co. v. Hudson, 85 Texas, 592; 18 Am. and Eng. Ency. of Law, p. 140 and notes; 20 Am. & Eng. Ency. of Law, p. 771; 23 Am. & Eng. Ency. of Law, p. 893; Railway Co. v. Foster, 44 S. W., 198.

The jurisdiction of the County Court to issue writs of injunction is limited. Before the county judge can exercise the power, it must affirmatively appear from the allegations of the plaintiff's petition that the value of the subject matter, to protect which the intervention of the court's equity powers is sought, is more than two hundred dollars, and does not exceed one thousand dollars. Dewitt Co. v. Wischkemper, 95 Texas, 435; Bohl v. Brown, 2 W. & W., sec. 541; Phillips v. Sanders, 80 S. W., 567.

*J. W. McKie* and *El. J. Gibson,* for appellee.—The court having jurisdiction of the subject matter of the suit, viz., oil produced and converted, could properly, as an auxiliary remedy in order to preserve the property, enforce its jurisdiction and prevent further continuous unlawful conversion of appellee's oil, and continuous violation of the contractual relations of the parties litigant, properly exercise its powers as a court of equity, and grant temporary injunction.

RAINEY, CHIEF JUSTICE.—This is an appeal from an order entered by the county judge of Navarro County, granted in chambers, restraining appellants from using and converting the one-eighth part of the product from the Derden premises, the same being described in plaintiff's petition, until further order of the court, and requiring them pending the litigation to file monthly statements showing the amount of the oil production from said premises, and also requiring appellants "to collect and impound a full one-eighth (⅛) of the oil production each month into a single tank located on the premises, that is free of leaks and that will hold said oil, and such tank as is now connected with the pipe line of the Navarro Refining Company, which tank the defendant is directed to point out to the plaintiff, W. L. Derden, and thus the defendant is required to deliver into actual possession of the said Derden each month hereafter, but including the month of March, his full one-eighth of the production from the Derden premises, after which said defendant is directed to permit said Derden to remove said one-eighth of the production from the premises either in wagons or by having it run into the pipe line of the Navarro Refining Company, and this without interference on the part of said defendants." A plea to the jurisdiction of the court was overruled and the injunction, as stated, was granted.

The suit of appellee was to recover of Staley the sum of six hundred dollars, the value of oil converted, and for damages done him by the violation of certain provisions of an oil contract entered into with said Staley, the sum total sued for being less than one thousand dollars. Barnsdall, after the making of said contract, became a partner of Staley, and made himself a party defendant to said suit.

The terms of the contract between Derden and Staley, bearing upon the matters in controversy stated in appellants' brief, are as ·follows: Derden conveyed to Staley the petroleum oil and other mineral estate in and to several tracts of land contiguously situated, aggregating about 1,200 acres. It was stipulated in the conveyance that Derden did "bargain, sell, alien and convey unto the said W. H. Staley all of the oil, gas, coal and other minerals in and under said premises, together with the right of ingress and egress at all times for the purpose of drilling wells for oil, gas and other minerals and for operating for minerals, and to lay all pipes he shall deem it necessary and proper for the conduct of operations, for the preparation of work thereon and for the production on said premises, and for the drilling, mining and transporting of oil, gas and other minerals on and from the said premises." Said conveyance also vested in Staley "the right of way over and across the said described lands, to be used in connection with the operation and production of the said lands and of such other premises and holdings of the said party of the second part (Staley), for the purpose of laying, operating and maintaining gas, oil and air lines, pipes, and he (Staley) shall have the right to erect along the said right of way and at such other place or places as he shall deem proper and convenient to erect, construct and maintain a telephone or telegraph line or lines, and for that purpose to plant a proper and sufficient line of poles in and upon the said land; and shall also have and maintain such pumping plants for all oil, air and water, or either, as he (Staley) shall deem necessary and proper, and shall at all times have the right to enter upon said premises for the purpose of maintaining and repairing any and all of the said lines and other structures and appliances which he may place on said premises. The said W. H. Staley to have and to hold the premises, rights and privileges herein granted to him, his heirs and assigns for the term of twenty-five years from the date hereof, and as long thereafter as oil, gas and other minerals are found on said premises in paying or profitable quantities." It is further provided, that "in laying and placing the said oil, gas and air lines over, across and upon the said premises, I (Staley) agree to bury the same a sufficient depth below the surface so as that the same shall in no way interfere with the cultivation and agricultural use of the said lands. That whatever injury, if any, shall occur to any growing crop on said premises or pasture lands by the placing and erecting of derricks and machinery, and laying of pipes, and from the operation of drilling of wells on said premises, and on account of laying the oil, gas and air lines, is to be settled for by me (Staley) when the damage shall be estimated and agreed upon by and between the parties at interest (Staley and Derden), and if no agreement can be reached between me and such parties or party, the arbitrators shall be selected, one each by the parties hereto, and

they shall select the third, if necessary, and their estimate shall be paid by me."

It was expressly stipulated that "the grant made by the terms of this contract is not intended as a franchise merely, but shall be construed and held to be a conveyance of the said property described for the purpose hereinbefore mentioned, and both parties herein so intend." As a part of the consideration for said conveyance, Staley agreed to give Derden a royalty of one-eighth of the oil produced. The conveyance recites that "I (Derden) reserving, however, to myself, the party of the first part, the one-eighth part of all the oil produced and saved upon and from said premises, the same to be delivered to and received by me (Derden) in the pipe line, to my credit, free of charge." As a further consideration, Staley agreed to begin operation for drilling of a well within sixty days, and to drill as many as six wells each year successively until there shall be at least as many as one gas well for each 25 acres of said land which shall prove to be gas territory, or, if oil wells are developed, then as many as one well to each 10 acres of said land which may prove to be oil territory; but whether gas or oil or both shall be found, "I shall drill as many as six wells each succeeding year until the area of said territory shall be exhausted, or the premises shall be found or become unprofitable to prospect or operate, or be by me abandoned as to any unexplored part thereof."

In consideration for the pipe line, pump station and right-of-way easement upon said land, Staley agreed to pay Derden the sum of $100 cash and $25 annually in advance, "so long as I (Staley) may use the said lines. In the event gas wells are developed with a sufficient supply of gas to justify the use of the same through the pipe line to be used off the premises, then I (Staley) agree to pay to the party of the first part (Derden) $100 per year, for each well from which gas is so used, the payments to be made quarterly; that is, $25 in advance every three months for each well so used. If gas is found on the premises Derden shall have the right, at his own expense and risk, to connect his residence in the City of Corsicana with the gas main owned by me (Staley) and to use gas for domestic purposes free of charge or cost." If coal shall be found in paying quantities, Staley to pay Derden four cents for each ton mined and marketed, payments to be made to Derden quarterly. Staley, when requested by Derden, shall bury all pipes used in the operation and production of oil and gas from the said wells. Staley "to have the use, free of charge, of any water, oil or gas, produced on the said lands, for the purpose of drilling and operating on said premises in the production and securing of oil, gas and other minerals."

On the question of jurisdiction appellants contend that "appellee's cause of action upon which the injunction issued was that for specific performance of covenants contained in a conveyance with reference to land. Jurisdiction of the county judge to grant the writ can not be acquired because of anticipation that oil might thereafter be severed from the realty and become personalty. On the date the writ was issued the oil was in place, and had not been severed, and was

therefore a part of. the realty and had not become personalty. All of the severed oil had been disposed of on that date. The decree upon which the writ issued does not deal with oil then severed, but operates wholly upon oil to be thereafter severed in the future."

.There is no question as to the contract between Derden and Staley being a conveyance of an interest in land, and the general laws regarding real estate apply to its enforcement. (Benavides v. Hunt, 79 Texas, 383; Southern Oil Co. v. Colquitt, 28 Texas Civ. App., 292.) The County Court has no jurisdiction to grant an injunction which affects an interest and estate in land. (Scripture v. Kent, 1 W. & W., sec. 1057; Gascamp v. Drews, 2 W. & W., sec. 95.)

The injunction required the defendants thereafter to "impound a full one-eighth of all the oil production each month into a single tank located on the premises that is free of leaks and that will hold said oil, and such tank as is connected with the pipe line of the Navarro Refining Company, which tank the defendant is directed to point out to the plaintiff, W. L. Derden, and thus the defendant is required to deliver into actual possession of the said Derden each month hereafter . . . his full one-eighth of the production from the Derden premises, after which said defendant is directed to permit said Derden either to remove said one-eighth of the production from the premises either in "wagons or by having it run into the pipe line of the Navarro Refining Company, and this without interference on the part of said defendant." This order directs the oil thereafter produced to be handled in a given way, and therein the court has assumed jurisdiction of oil that is real estate and has not been severed from the land, thus attempting to enforce a contract relating to land, and which order affected the rights to an interest or estate in land. At the time the writ was granted it was not shown that any oil that had been severed from the land was on hand, and the court had no right to assume jurisdiction over the oil that was expected to be thereafter produced.

The appellant contends that "the jurisdiction of the County Court to issue writs of injunction is limited. Before the county judge can exercise the power, it must affirmatively appear from the allegations of the plaintiff's petition that the value of the subject matter, to protect which the intervention of the court's equity powers is sought, is more than two hundred dollars and does not exceed one thousand dollars." The jurisdiction of the County Court is limited by the Constitution to suits where the amount in controversy exceeds two hundred dollars and does not exceed one thousand dollars. "The same rule is applicable to writs of injunction, which can only be issued by the County Court when the matter in controversy exceeds two hundred dollars and does not exceed one thousand dollars in value." (DeWitt County v. Wischkemper, 95 Texas, 435.)

The original petition alleged, in substance, a breach of the contract, a conversion of oil to the value of $600, and damages to the premises and crops in the sum of $350. An amendment to the petition was filed and, in addition to the averments in the original, set forth the violation of the contract by Staley in converting the oil, refusal to pay or account for the oil produced, etc., and averred as follows: "In view of the wrongs and injuries inflicted upon him by de-

fendant, and in view of defendant's determination to continue to convert and appropriate all of the products of said wells to his own use and benefit, and in view of the facts and circumstances attendant upon the situation, as above set out and explained, that plaintiff has no remedy at law which is sufficient, adequate and complete to protect him against the further wrongdoing and illegal and unlawful conduct of defendant towards this plaintiff; and that plaintiff is, therefore, entitled to invoke the equitable powers of this court to restrain and enjoin the defendant from the further illegal and unlawful conversion and appropriation of the daily output of said wells, and is entitled to receive relief by the issuance of a temporary writ of injunction of the nature hereinafter more fully demanded." Plaintiff prayed for an injunction restraining Staley "from using, appropriating or converting any of the oil saved or produced upon said premises by said nine wells, which are not connected with said pipe line, viz., the pipe line of Navarro Refining Company; and that upon final hearing the injunction granted be perpetuated." The contract was to run for twenty-five years from its date in 1906, and the petition sought to enforce it as to the production of oil. There was no allegation as to the value of the oil to be produced. In order to confer jurisdiction on the County Court to enforce the contract as to the oil thereafter produced, it was necessary to allege the value of such oil to be within the limits prescribed by the Constitution.

We are of the opinion that the County Court exceeded its jurisdiction in granting said injunction, and the judgment relating thereto is reversed and the injunction dismissed.

*Reversed and injunction dismissed.*