HAYNIE et al. v. STOVALL et al.
(No. 443.)

(Court of Civil Appeals of Texas. Beaumont. May 26, 1919. Rehearing Denied June 11, 1919.)

1. HOMESTEAD ⬅118(5)—CONTRACT FOR OIL LEASE—JOINDER OF WIFE.

Under Rev. St. arts. 1103, 1114, 1115, a contract to execute an oil lease on homestead property, in which contract the wife of the owner has not joined, is void.

2. EQUITY ⬅57—EQUITY REGARDS AS DONE THAT WHICH OUGHT TO BE DONE.

Where an oil prospector agreed to accept an oil lease in terms fully set forth as a part of the contract within 5 days after releases were procured from one who held prior oil leases on the land, and such releases were obtained, the contract became executed under the maxim that, equity regards as done that which ought to be done, though the new lease was not formally executed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. APPEAL AND ERROR ⟷1052(2)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Admission of parol evidence as to the terms of a written contract is not prejudicial error, where the writing is admitted in evidence, and its terms conform in all respects to the parol testimony adduced.

Error from District Court, Liberty County; L. B. Hightower, Sr., Judge.

Suit by S. M. Stovall and others against A. F. Haynie and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

Stevens & Stevens, of Houston, and Thomas, Milam & Touchstone, of Dallas, for plaintiffs in error.

E. B. Pickett, Jr., of Liberty, for defendants in error.

WALKER, J. This suit was filed in the district court of Liberty county on the 24th day of July, 1916, by S. M. Stovall, J. H. Stengler, W. E. Canter, Amel Abel, I Carr, Hubert Taylor, and A. R. Dagle, residents of Liberty county, Tex., M. Smith, S. Guedry, H. G. Camp, and Bonita Baggett, a minor, appearing and acting herein by her grandfather, L. Carr, as her next friend, residents of Hardin county, Tex., against A. F. Haynie, J. G. Wofford, and W. M. Stephenson, to set aside, annul, and cancel the following contract:

"State of Texas, County of Liberty.

"Know all men by these presents: That this contract made and entered into this the 10th day of March, A. D. 1911, by and between Haynie & Wofford, and W. M. Stephenson, first parties, of Hardin county, Texas, and J. H. Stengler, S. M. Stovall, W. E. Canter, Ivan Carr, Amel Abel, Matilda Moor, H. Taylor, A. R. Dagle, M. Smith, S. Guedry, second parties of Liberty county, Texas, witnesseth:

"That in consideration of the covenants and agreements hereinafter contained, the said second parties hereby agree to execute a lease as per the printed form hereto attached and made a part hereof, as follows: Giving and granting unto said first parties the exclusive right to drill for oil and other minerals upon each of second parties' respective lands, to be for the same amount of land and upon the same terms as was heretofore given by them in 1910 to either W. M. Stephenson or T. O. Massey, and when the lease heretofore given by said second parties or either of them shall have been canceled by law, or shall have been properly released by other means, we, each of us, agree and do hereby bind ourselves to sign and duly acknowledge a copy of the said above-described instrument.

"Said first parties hereby agree, in consideration of the stipulations and agreement herein set out by said second parties, that they will attempt to secure the release of each of the second party's land heretofore leased and now held by the Comet Oil Company, by peaceful means if possible, and if said Comet Oil Company shall re-fuse to lease all of said lands now held by them upon demand, then the said first parties hereby bind themselves to employ a suitable attorney and file suit for cancellation of said leases and to pay said attorney's fees and all cost of suit.

"Said second parties agree to execute within five (5) days after the final securing of said above leases from the Comet Oil Company a new lease to A. F. Haynie or W. M. Stephenson who shall represent said first parties, said lease to be of the same terms and conditions as the original lease heretofore given to W. M. Stephenson or T. O. Massey in 1910, and to properly sign and acknowledge the same as required by law so as to make a good and sufficient lease, the fees to be paid by said first parties. [Seal.] J. H. Stengler. S. M. Stovall. Ivan Carr. H. Taylor. M. Smith. W. E. Canter. Amel Abel. Matilda Moor. A. R. Dagle. S. Guedry. Haynie, Wofford & Stephenson."

Plaintiffs alleged that defendants had wholly and entirely failed to comply with the terms and obligations of the above contract, and had failed to drill any well or wells upon the several tracts of land, to which said agreement related, according to the terms of the leases to which said agreement referred, and in all other material particulars and conditions defendants had completely failed to abide by and comply with the terms of said written agreement, and, having so failed, the said agreement is now a nullity, and should be so determined; and, further, that as the land owned by plaintiffs, S. M. Stovall, J. H. Stengler, W. E. Canter, Amel Abel, Hubert Taylor, and A. R. Dagle, covered by this lease contract, was at the time of the execution of said contract the homestead of the respective plaintiffs, and that their wives did not join in the execution thereof, for that reason the contract was wholly null and void.

Defendants answered by general demurrer, special demurrer, and general denial, and further that they had complied with all the conditions imposed upon them by the contract, and that plaintiffs had failed and refused to execute and deliver to them the leases as stipulated for.

Briefly stated, the facts are as follows' Previous to the execution of this contract, the Comet Oil Company held leases against plaintiffs' lands. The defendants had been negotiating with plaintiffs for some time for leases on these lands, and plaintiffs refused to lease to them until the Comet Oil Company leases were canceled. For the consideration stated in the contract, the defendants agreed to secure, either by suit or by peaceful means, the cancellation of the Comet Oil Company leases. This they did by suit, the district court of Liberty county rendering judgment on the 6th day of August, 1912, canceling all the Comet Oil Company leases. In attorney's fees and other cost items, the defendants expended about $500

---

in canceling these Comet Oil Company leases. The defendants never requested the plaintiffs to execute the leases stipulated for in the above contract, nor did the plaintiffs tender such leases to the defendants. In explaining why this was not done, Mr. Haynie, one of the defendants, testified that he never said anything to any of the parties about giving the lease after the Comet Oil Company judgment was obtained, and "the truth is the boom died out" (referring to the oil excitement at the time the contract was made). The trial of this case resulted in an instructed verdict in favor of the defendants in error.

The following statement is taken from the brief of the defendants in error:

"During the trial it was admitted by defendants (plaintiffs in error) that the lands owned by S. M. Stovall, J. H. Stengler, Amel Abel, Hubert Taylor, W. E. Canter, and A. R. Dagle, which were affected by said written agreement of date March 10, 1911, were at that time the homesteads of each of said parties, and that at that time each of said parties resided on their said lands as their homestead with their families, and were still doing so at the time of this trial, and none of their wives had joined them in signing said written instrument of date March 10, 1911. And, as stated on page 7 of brief for plaintiffs in error, they, as defendants in the trial court, did plead that they had expended $500 in procuring cancellation of the Comet Oil Company leases, and that, in the event it was shown that part of the land involved was the homestead or separate property of any of the wives of plaintiffs, then the defendants prayed for recovery of the value of such land, alleging that value to be $200 per acre, or a total of $10,000, but such pleas they abandoned, and during the trial made no proof whatever in any attempt to support such pleading."

[1] Under this statement, defendants in error advance the following proposition:

"A portion of the lands affected by the written agreement of date March 10, 1911, were at that time the homesteads of the several parties owning such lands and who signed such document, and their wives did not join in the execution thereof. Therefore the said agreement as to those lands was null and void, and clearly it was proper for the trial court to so adjudge and decree."

This proposition is a correct statement of the law on the facts of this case. As the wives of the plaintiffs named did not join in the execution of the contract of date March 10, 1911, and as this contract affected their homestead, it was void as to them. R. S. arts. 1103, 1114, 1115; Southern Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169; Staley & Barnsdall v. Derden, 57 Tex. Civ. App. 142, 121 S. W. 1136; Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Benavides v. Hunt, 79 Tex. 383; 15 S. W. 396; Jones v. Goff, 63 Tex. 248; Dykes v. O'Connor, 83 Tex. 160, 18 S. W. 490; Dority v. Dority, 96 Tex. 217, 71 S. W. 950, 60 L. R. A. 941; Ellis v. Bingham, 150 S. W. 603; Blakeley v. Kanaman, 107 Tex. 206, 175 S. W. 674.

[2] The following questions were asked each of the plaintiffs:

"What agreement, if any, did you have with Mr. Haynie or Mr. Stephenson about their drilling, or undertaking to drill wells on the tracts that are covered by these several leases you were to make?" And: "When you made this agreement, had you been promised anything by Mr. Stephenson relative to when he would begin drilling a well on some one or more of those tracts after the Comet Oil Company leases were released?"

The following answer, in substance, was given by each of the plaintiffs to these questions:

"At the time Mr. Stephenson came down there they made this proposition, to wit, that if we would give them a lease upon this land they would immediately go to work drilling, put down a deep well there, and we said, 'Well, now, we can't do that from the fact that the Comet Oil Company has a lease on this land,' and they (the defendants, Mr. Haynie and Mr. Stephenson, who were present) agreed if we would give them a lease they would put down a well, a deep well there at once, and when we told them there was already a lease on the land they agreed that they would, if we would execute a lease to them, go to work and secure a release from the Comet Oil Company, and we agreed to do that, and we agreed to begin to execute a lease within 5 days after they had obtained this release from the Comet Oil Company, and they (meaning the defendants) were to begin drilling immediately, not to exceed 90 days from that date. They were to have 5 days from the date of the release of the Comet Oil Company's lease to have us execute a new lease, and 90 days from that time within which to begin drilling a well. The agreement of Mr. Stephenson for the defendants to so drill the well was the sole cause of us (meaning the plaintiffs) signing the contract."

These questions and this answer were duly excepted to by plaintiffs in error. The bill of exceptions shows that before this testimony was offered by defendants in error, the contract of date March 10, 1911, together with the form of lease which plaintiffs agreed to execute, had been introduced in evidence. This lease to be executed by plaintiffs contained the following clause:

"Said second party (meaning the first parties in the agreement) further agrees to begin drilling a well in the vicinity within ninety (90) days from date and to begin drilling a second well upon the adjoining lease controlled by them within ninety (90) days from the completion of the said first well, and to begin drilling a new well upon the adjoining properties every ninety (90) days thereafter until the above land shall have been drilled upon and in no event shall it be longer than one year from the completion of the first well drilled in the vicinity by the said first party or his assigns, until

operations for drilling a well upon this particular land shall have begun, and in the event of a failure to do so, this contract can be declared null and void as above provided."

Plaintiffs in error made the following objections to the admission of this testimony:

"That the contract above set forth is explicit in its terms and that the ground of objection to the evidence was that the proof sought to be elicited from the witness was an attempt to vary the terms of a written contract, which is in no wise ambiguous, and which expressly states the terms of the agreement as to its conditions subsequent and as to the several undertakings of the parties, and that the attempt as now made by this testimony is not to show a different consideration, but is an attempt to show an agreement to do different things than the defendant in this case agreed to do, and the testimony is further inadmissible because it attempts to vary the terms of a written agreement by parol evidence, and, further, that there is no allegation in the plaintiffs' pleadings of fraud, accident, or mistake as to the several undertakings of the parties."

The admission of this testimony is the only error assigned by plaintiffs in error, and under this assignment they advance the following proposition:

"While a different amount than that recited in the written contract may be proved as the consideration, yet when the consideration is contractual, or when the consideration is a written contract between the parties to do certain things, parol evidence is inadmissible to change the terms of such contractual consideration as to the time of its performance."

This is a correct legal proposition, but is not the law of this case. The contract which plaintiffs seek to have canceled sets out the understanding and agreement between the parties. The terms of the lease contract to be executed by plaintiffs are fully stated, in fact an exact copy of the lease contemplated in the contract, dated March 10, 1911, is attached to this contract. Plaintiffs bound themselves on the conditions set out in this contract to execute this lease. Plaintiffs in error obligated themselves to secure cancellation of the Comet Oil Company leases. The record shows that they did this, and when this had been done by them they were in position to ask for a specific performance of the obligation of plaintiffs, and in equity all the rights granted to them in the contract dated March 10, 1911, and more fully and completely set out in the exhibit attached to their contract, accrued to them. "Equity regards and treats that as done which in good conscience ought to be done." Discussing this maxim of equity, Pomeroy says:

"Another immediate and evident consequence of the principle is the equitable property created by mere agreements to purchase and sell lands. If the contract is made upon an actual valued consideration and complies in all respects with the requisites prescribed by equity, then, as soon as it is executed and delivered, the vendee acquires an equitable estate in the land, subject simply to a lien in favor of the seller as security for payment of price, while the vendor becomes equitable owner of the purchase money. There is in this case, as in the last, an equitable conversion; the vendee's interest is at once converted into real property with all its features and incidents, while the vendor's interest is, to the same extent, personal estate." Pomeroy's Equity Jurisprudence, vol. 1, p. 621, § 372.

Discussing this maxim, the Supreme Court of Texas, in Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104, in an opinion written by Judge Gaines, says:

"It is also complaining that the court erred in not striking out, upon defendant's exception, so much of the petition as sought to enforce a lien upon the property therein described. This assignment is not well taken. The plaintiff averred a substantial compliance with the contract upon his part. This entitled him to have it enforced according to its terms to the extent that defendant had actually received cattle under it. A written agreement to give a mortgage, with which the party entitled thereto has complied, is treated in equity as a mortgage, and will be enforced as such between parties to the original transaction."

In Schenk v. Wicks, opinion by the Supreme Court of Utah, 23 Utah, 576, 65 Pac. 732, one Albert J. White contracted in writing with one Shaw to convey to him, for the sum of $2,000, then paid by Shaw, and the further sum of $3,000, to be thereafter paid, an undivided one-half interest in fee in lot 5, block 9, plat F, Salt Lake City. Discussing this contract, the Supreme Court said:

"Under the executory agreement of October 4, 1890, Shaw, the vendee, acquired the equitable title to said premises, and the vendor acquired a lien on the equitable interest of the vendee for the payment of the note"—citing Pomeroy's Equity Jurisprudence.

In Peay v. Seigler, an opinion by the Supreme Court of South Carolina, 48 S. C. 509, 26 S. E. 890, 59 Am. St. Rep. 737, one Waller contracted to sell to one Jenkins certain lands. In a suit involving the construction of this contract, the court said:

"What is more to the point, when Jenkins made the contract and entered into possession, after having made the cash payment required, the relations between the parties became that of mortgagor and mortgagee, and in equity Waller had a lien on the land for the deferred payments."

[3] The decisions cited by us above, involving the homestead question, fully sustain the proposition that a lease to prospect and drill for oil, such as the plaintiffs contracted to execute in this case, involves an interest in the land, and is governed by the same rules as conveyances of real estate.

Hence, when the district court of Liberty county canceled the Comet Oil Company leases, plaintiffs in error had a contract as complete between them and defendants in error as if there had been a formal execution of the same. If we are correct in this conclusion, then there was no reversible error in the admission of the testimony complained of, because it exactly states the terms of the contract as written.

Though we have carefully examined all the authorities cited by plaintiffs in error, and have given full consideration to their able brief, we are not able to find any error in the action of the court.

The judgment of the trial court is in all things affirmed.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes