**JONES et al. v. MEYER et al.   (No. 6828.)**

(Court of Civil Appeals of Texas. San Antonio.   Jan. 3, 1923.   Motion for Rehearing Granted Feb. 7, 1923.   Third Motion for Rehearing Denied March 14, 1923.)

**1. Insane persons ⚖══66—Return of consideration still possessed prerequisite to rescission of transaction.**

It is a prerequisite to a rescission of a transaction on the ground of incompetency that the incompetent repay or tender the portion of the consideration he still has and account for such portion as he has used for necessaries.

**2. Insane persons ⚖══66—Prayer for general equity may take place of tender or money or property as prerequisite to recovery.**

In an action to rescind transaction of an insane person, where general equity was sought, it was unnecessary for the plaintiff to tender as a condition precedent to recovery the consideration received and possessed.

**3. Insane persons ⚖══98, 99—Burden of proving money loaned to insane person was used for necessaries on lender; question held for jury under evidence.**

Whether money loaned to an insane person was used for necessaries *held*, under the evidence, for the jury; the burden of proof of such issue being on the lender.

**4. Insane persons ⚖══66—Upon rescission of contract to borrow money, lender must be placed in statu quo as to all money used for necessaries.**

A contract of an insane person is not void but voidable; *held*, however, that before a contract under which an insane person has borrowed money can be rescinded he must place the lender in statu quo in respect to all of the money used for necessaries, though not otherwise.

**5. Interest ⚖══10—Recoverable on money loaned insane person for necessaries.**

Interest is recoverable on money loaned to insane person and used for necessaries.

**6. Insane persons ⚖══66—Lender of money to insane person held entitled to recover only portion used for necessaries.**

In an action to rescind a sale of realty by an insane person, where it appeared that a $10,000 note received as part payment had been pledged by the insane person as collateral for a $5,000 loan with which money he had paid commissions, taxes, and other debts, *held*, that the pledgee of the $10,000 note was not under any theory entitled to any relief against the maker of that note, but was entitled to receive only the amount which had been expended for necessaries out of the $5,000 loaned by him.

**7. Insane persons ⚖══66—Action to cancel conveyance of insane person held not controlled by statute passing title to spouse with guardianship.**

An action to cancel the sale and conveyance of realty by an insane person *held* not control-led by Rev. St. art. 3593, providing that where husband or wife dies intestate or becomes insane, having no issue or separate property, the common property passes to the survivor and no administration or guardianship of the estate of the insane person shall be necessary, where there was no showing that the conveyances were executed under the provision of the article or pursuant to an adjudication of insanity.

**8. Insane persons ⚖══75—Items constituting "necessaries" for insane person stated.**

Within the rule that one lending money to an insane person may recover only the portion thereof used for necessaries, money used in paying debts incurred for food, clothing, medicines, medical treatment, and taxes would be recoverable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries.]

**9. Insane persons ⚖══99 — Reasonableness of items claimed to be necessaries for jury.**

Under the rule that one lending money to an insane person may recover only that part used for necessaries, the question of the reasonableness of items claimed to be necessaries is for the jury.

### On Motion for Rehearing.

**10. Insane persons ⚖══75—Attorney's fees in action to cancel conveyance are necessaries, so that borrowed money spent therefor is recoverable by lender.**

In an action involving the loan of money to an insane person and the cancellation of a sale of realty by him, *held*, that the attorney's fees agreed to be paid by plaintiff constituted expenditure for necessaries, which could be recovered by the lender of the money, though the allowance of attorney's fees for such defendant lender was an improper charge.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by D. A. Meyer and others against Henry B. Jones and others. From judgment for plaintiff, defendants appeal. Affirmed.

T. J. Murray and Don A. Bliss, both of San Antonio, for appellants.

Henry & Bickett and Hal H. Browne, all of San Antonio, for appellees.

COBBS, J.   This suit was prosecuted by appellee, F. B. Meyer, as next friend of D. A. Meyer and Louise Meyer, wife of D. A. Meyer, against Mary K. Jones and husband, L. Jones, Henry B. Jones, J. J. Donaldson, and T. J. Murray, appellants. It was to cancel certain transactions and written instruments between the parties based upon fraud and want of mental capacity of the husband to execute the instruments.

The cause of action is predicated upon a transaction wherein Henry B. Jones secured a deed to appellees' homestead.   D. A. Meyer

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was alleged at the time not to have had sufficient mental capacity to make such a contract. No money or other property was paid down in cash therefor, but Henry Jones executed his two notes for the same as the purchase price, one for $10,000 with 8 per cent. interest payable semiannually, and one for $11,000 with 8 per cent. interest payable semiannually. L. Jones, the father of Henry Jones, both negroes, made this sale as the agent of Meyer, and for which Meyer gave Henry Jones, the son, $1,000 cash and an equity in a house and lot valued at $800 and six lots worth about $250 each. The same day that D. A. Meyer conveyed the property to Henry Jones, Henry Jones conveyed it to his mother, Mary K. Jones, subject to the debt. The same day of the sale Meyer borrowed $5,000 from appellant J. J. Donaldson, executing his note therefor, and put up with him the $10,000 note as collateral, making it the first and prior lien, and out of which $5,000 loan Meyer paid the sum of $1,000 to L. Jones as the commission. Appellees were to remain in and keep possession of the premises until the notes were paid. That appellees have remained in possession thereof as formerly and no change of possession has ever occurred. The wife knew nothing about the borrowing of the money from appellant Donaldson, but testified prior to the closing of the transaction she had supposed that L. Jones was to borrow the money.

An express lien was retained in the deed to secure the notes. Henry B. Jones executed and delivered to the said D. A. Meyer, as additional security, a deed of trust conveying said tract of land unto T. J. Murray, trustee, with power of sale for the purpose of securing the notes for $10,000 and $11,000.

The case was submitted to the jury on special issues, and the questions and answers of the jury are substantially following: That in answer to special issue No. 1, the jury stated the 14 acres of land described in plaintiff's petition continued to be used and occupied as a homestead by D. A. Meyer and Louise Meyer, his wife, from the time of the execution of the instruments until the trial; and in answer to special issue No. 2 the answer was that the conveyance by Meyer to H. B. Jones was not simulated or a pretended sale for the purpose of securing the $5,000 from J. J. Donaldson and created a lien on the land. In answer to No. 4, they answered that D. A. Meyer at the time of the execution of the deed to H. B. Jones was of unsound mind; and in answer to No. 5, that D. A. Meyer did not have sufficient mental capacity to understand the nature of the transaction in making and executing a deed to H. B. Jones; and in answer to No. 6, say that out of the $5,000 paid by Donaldson to Meyer, the sum of $2,800 was used for necessaries for the said Meyer and his wife.

In this case an express lien was retained in the deed to secure the notes to Meyer and there were no rights or claims of appellant, based upon the transaction other than that of the $5,000 advanced by him on the $10,000 note he held as collateral to secure said note. Title remains in the grantor until those notes shall be paid or discharged. The jury found under sufficient facts that Meyer was incompetent at the time to execute the instruments and therefore the title never passed out of appellees.

The evidence shows that the land was the community property of D. A. Meyer and Louise Meyer, his wife.

It is claimed by appellant that an instructed verdict should have been given in favor of appellant against Jones for the full amount of the $10,000 note and in favor of D. A. Meyer or his next friend against H. B. Jones for the full amount of the $11,000 note, etc. It is hard to see upon what theory counsel can contend for an instructed verdict for the $10,000 note in his favor against Meyer and in favor of Meyer for the $11,000 note. Under the jury's finding, the notes as well as the other instruments should be canceled.

[1, 2] On the subject of the right to recover in a proceeding to set aside a fraudulent sale without tendering the money, much has been written. We have had occasion heretofore to give a careful examination of this particular question, and for these views expressed on this subject and kindred subjects see Wisdom v. Peak, 220 S. W. 213, and other cases. Appellees seem to concede that whatever portion of the $5,000 was used and expended by the husband and wife for necessaries should be decreed to Donaldson and a recovery should be had therefor, without regard to any homestead question. If Donaldson is entitled to recover any part of the money he advanced, why is he not entitled to recover the whole? The answer is he is dealing with a person the jury found insane. He paid out his good money and in equity he will be treated justly. It is too well settled in this state and in other jurisdictions that a minor or an insane person shall be required to restore the consideration received before they will be permitted, on account of their disability, to cancel the debt and instruments pertaining thereto—before they are permitted to keep the pledged property. The vendor remained in 'possession of the property with an expressed lien reserved in the deed to secure the payment of the notes, and still is in possession. Ordinarily possession puts the one dealing with it upon inquiry, but it is not unusual for the seller under some kind of an arrangement to retain possession of the property for a considerable period. Even in such case a purchaser has the right to buy the property and the right to buy a man's homestead when the formalities of law have been complied with, yet leaves it an executory contract that

may be repudiated. Ley v. Hahn, 36 Tex, Civ. App. 208, 81 S. W. 355; Jones v. Goff, 63 Tex. 248. The authorities have plainly required in cases of incompetency the payment of or the tender of the consideration still on hand at the time the suit was instituted to rescind and account for all the consideration that had been used prior to the time of trial for necessaries, as a condition precedent to the rescission of the transaction. An offer to do so and prayer to do general equity often takes the place of a tender of money or property and leaves it for the court to administer the equities between the parties, and therefore, in this case, it was not necessary for the plaintiff to have paid into court the loan as a condition precedent to his recovery.

[3] It is incumbent always and the burden is upon the lender to establish the fact in loaning money to an insane person, that it was expended for the benefit of the insane person in the way of being used for necessaries; but, after all, it is a matter for the jury to pass upon after hearing all the testimony.

The testimony showed that the money obtained by D. A. Meyer from Donaldson was employed in paying to L. Jones $821 as a commission for making the sale; $150 to T. J. Murray for examining the title and drafting the papers; and a small sum of about $5 for paying acknowledgment fees and recording the instrument; $500 in paying the attorney in this case for bringing this suit; $300 to reimburse his sister for money advanced by his sister to pay the taxes on the property; $250 to each of his daughters for property which has been purchased from them by D. A. Meyer when it was not claimed he was insane and $159 for insurance premiums on fire insurance policy issued on the improvements on the property for the benefit of D. A. Meyer; in paying debts that had been contracted for groceries, clothing, and medical treatment for D. A. Meyer, including physician's bills and drug bills and to support the family up to the time of the trial of this suit, leaving $200 on hand at the time of the trial.

[4, 5] Of course, the contract of an insane person is not void. It may be left to stand, but it is voidable, and equity will not allow him to avoid a contract by which he has been benefited and cannot place the lender in statu quo. He must place the lender in statu quo in respect to the money actually used for necessaries and is not required to place him in statu quo as to that part of the money that was not used for necessaries. Equity enforces a return of money upon equitable principles, and in doing so will allow interest at the rate expressed in the loan.

[6] The court did not err in not giving the instructed request submitted by appellants. There is no theory upon which a judgment could be instructed in favor of appellant for the face value of the notes. Donaldson had only advanced $5,000 on the $10,000 collateral note; but from our view of the case, appellee was entitled to recover only the amount of money expended for necessaries as the rule seems to be laid down by the decisions. Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115.

[7] Appellant contends and with much force that this transaction is controlled by the provisions of article 3593, R. S., which provides as follows:

"Where the husband or wife dies intestate, or becomes insane, having no child or children, and no separate property, the common property passes to the survivor, charged with the debts of the community; and no administration thereon or guardianship of the estate of the insane wife or husband shall be necessary."

It would appear therefrom that the title to all common property would on the insanity of the husband descend directly to the wife without the necessity of any administration were there no children or separate estate of the husband. Cason v. Laney (Tex. Civ. App.) 27 S. W. 421; Wall v. Clark, 19 Tex. 321; Howell v. Fidelity Lumber Co. (Tex. Com. App.) 228 S. W. 182. But there is no pretense that the appellees when they executed such conveyance were doing so under the provisions of that article, or in pursuance of any adjudication of his insanity. It presents here a grave situation and one not easily determined in view of the manner of the trial and the manner in which the sale was made.

[8, 9] We agree with appellant that within the terms of necessities it would include any expenditures out of the money obtained from appellant used in paying debts already reasonably incurred for food and clothing for the family and in paying debts that they had incurred for medicines and medical treatment for D. A. Meyer and for taxes on said property. However, the reasonableness of such items are matters that should be submitted to the jury. Having held that the attorney fee, paid or agreed to be paid the attorney for bringing this suit a necessity, by the same reasoning, it was necessary for the appellant to employ counsel to defend this suit and enforce his right of recovery for so much of the purchase price or money advanced on the sale, used as necessaries. While the notes express the amount of the attorneys' fees recoverable, we believe it a proper item to be ascertained by the jury as to what is a reasonable and necessary amount to be paid. Therefore in both cases the necessity and reasonableness of the attorneys' fee, must be submitted to the jury for their finding.

The appellant is entitled to have an equitable lien created, fixed and established on said land to secure the return and payment

of any amount he may recover in this proceeding, but there shall be no foreclosure of any alleged lien for any part of the two notes, the one for $10,000 and the one for $11,000.

The court should have rendered a personal judgment in favor of appellant against H. B. Jones for the full sum of any money paid him in the transaction between them with interest and attorneys' fees, but to be credited with such amount of money as may be recovered from appellee. The opinion heretofore written in this case is withdrawn, and this is substituted therefor.

For the reason stated, this case will be reversed and remanded for another trial. We do not pass upon the facts in this case, nor express any views thereupon, as there will have to be another trial for they nor the pleadings may be the same. The findings of the jury are not in such form as to allow us to render a judgment. For the reasons given, the judgment of the trial court is reversed and remanded.

### On Motion for Rehearing.

We have carefully gone over the whole case upon the motions for a rehearing presented by both parties, and reached the conclusion that the judgment of the trial court should be affirmed.

The jury passed, as it was required to do, upon all the items submitted by the court, expended as necessaries for Meyer and found in favor of appellees, and we do not feel that we should disturb them.

[10] While the writer has grave doubts as to whether the attorneys' fees allowed the appellees was a proper charge, the jury has passed upon its reasonableness. In view of the further fact that there has been no authorities presented to show that such was, and in view of the further fact that the majority of this court believe it to be, a proper charge, and the allowance of the attorneys for appellant not a proper charge, the judgment on those issues will not be disturbed.

The claim of appellant Donaldson as shown grows more particularly out of that certain promissory note of November 4, 1918, executed and signed alone by David A. Meyer payable to appellant Donaldson five years after date for $5,000 with 8 per cent. interest per annum with an additional 10 per cent. for attorneys' fees. It was secured by the described vendor's lien note payable to David A. Meyer executed by Henry B. Jones, which David A. Meyer delivered to appellant Donaldson as collateral security. As Henry B. Jones was not bound in any way on that note, there could be no recovery against him. As Meyer delivered the $10,000 note to Donaldson as collateral security, and that note held to be void and illegal, and as there was no independent promise, obligation, or un-

dertaking on the part of Meyer to pay Donaldson any part of the $5,000 note, there was no error in the court's refusal to grant any relief in favor of Donaldson against Jones.

The motion for rehearing filed by appellee is granted, and the judgment of this court reversing the judgment of the trial court is set aside, and the judgment of the trial court is affirmed.

### On Application for Leave to File Appellants' Third Motion for Rehearing.

There is no independent and distinct allegation or affirmative pleading or prayer demanding, as a condition precedent to appellee's recovery, that the sum of $5,000 and the interest loaned to appellant or any part thereof remaining on hand be brought into court, or that the decree awarding judgment of cancellation of the instruments be made dependent upon the payment of such sum of money.

To illustrate, where complaint is made and demand for relief is sought (see, as presented by appellant in the first, fourth, tenth, eleventh, thirteenth, and other propositions of law), it is either to foreclose the alleged lien securing the $5,000 note, or to foreclose the lien on the Jones notes and satisfy the $5,000 out of the proceeds of the foreclosed Jones notes, or deposit in court the $200 on hand. This whole subject is covered by the opinion of this court in Wisdom v. Peck, 220 S. W. 213, and especially in the opinion upon the motion for rehearing in that case that largely controls the disposition of this case. The court adjudged to appellant $3,000 with 6 per cent. interest from November 4, 1918, and awarded execution in favor of J. J. Donaldson, for the collection of the same, against D. A. Meyer. That judgment was affirmed.

The motion is overruled.